**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 92-9017**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**GARY FRANK CONDREN,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Northern District of Texas**
_____
March 31, 1994

Before WISDOM, BARKSDALE and EMILIO M. GARZA, Circuit Judges.

BARKSDALE, Circuit Judge:

Gary Frank Condren's sentence for being a felon in possession of a firearm was enhanced under Sentencing Guidelines § 2K2.1(b)(5) because illegal drugs, in addition to the firearm, were found in his home. The only issue on appeal is the construction to be given the "specific offense characteristic" (sentence enhancement) found in that section: "used or possessed any firearm or ammunition in connection with another felony offense". We **AFFIRM**.

I.

On January 13, 1992, Dallas undercover police officers traded two televisions and a VCR to Condren, in exchange for five pieces ("rocks") of crack cocaine. Based on this, a search warrant for his home was obtained; it was executed the next day. Drug

paraphernalia, including crack pipes, mirrors, and a scale were found. And, on top of a desk in the bedroom, two rocks of crack, which weighed .1 gram, as well as 33.3 grams of marijuana seed, were found. Moreover, a loaded .22-caliber revolver was found in a drawer in the desk.[1]

Condren was indicted on, and pleaded guilty to, one count of violating 18 U.S.C. § 922(g)(1), possession of a firearm by a felon. The presentence investigation report (PSR) set his base offense level at 24;[2] and added four points pursuant to the Guidelines section in issue, § 2K2.1(b)(5), which requires that adjustment if the firearm was possessed "in connection with another felony offense".[3]

Condren filed objections to the PSR, including to the sentence enhancement. The enhancement objection, however, was to the wrong subsection of § 2K2.1.[4] In any event, at the sentencing hearing in

---

[1]    Condren asserts that the drawer was locked and that the firearm was being held only as collateral for a loan made by his then wife to their neighbors.

[2]    This is the required level for a § 922(g) violation, where the defendant also had at least two prior felony convictions for crimes of violence or controlled substance offenses. *See* U.S.S.G. § 2K1.2(a)(2) (setting offense levels for firearms possession offenses).

[3]    Because Condren had a criminal history category of VI, *see* U.S.S.G. Ch. 5, pt. A, the guideline imprisonment range was 140 to 175 months. But, because the statutory maximum term of imprisonment for § 922(g) violations is 10 years, *see* 18 U.S.C. § 924(a)(2), the imprisonment term was adjusted downward to 120 months. U.S.S.G. § 5G1.1(a) (if guideline range exceeds statutory maximum, the latter shall be guideline sentence). The PSR recommended the 120 months.

[4]    Condren's written objection to his offense level was to PSR ¶ 11, which set his base offense level. The enhancement, however,

mid-November 1992, Condren's counsel objected (unsuccessfully) to

the enhancement in relation to the subsection in issue.[5]

---

was covered (recommended) in PSR ¶ 12. And, in the objection, he referred to the cross-reference provision of § 2K2.1(c)(2). The objection stated that there should be "some nexus with the offense of conviction", and that Condren objected to the enhancement because there was no connection between "possession of a gun made in November, 1991 [when the firearm allegedly was taken as collateral], and on conduct alleged to have occurred in January, 1992". This may be similar to the contention made on appeal, because, apparently, the reference to the latter conduct concerns the possession and/or distribution of cocaine.

As noted, the objection referred to PSR ¶ 11, and to the cross-reference provision of § 2K2.1(c); the written objections do not mention either PSR ¶ 12, which covered the § 2K2.1(b)(5) enhancement that is in issue, or that section. And, although § 2K2.1(c) relates to use or possession of a firearm in connection with another offense, as does § 2K2.1(b)(5), it was not used for the sentence, as the Probation Officer pointed out in his responses to Condren's objections. Rather, as also pointed out by the PSR addendum, the enhancement was under § 2K2.1(b)(5).

[5] At sentencing, Condren was represented by a different federal public defender than the one who had prepared the written objections to the PSR. Condren's counsel for the first time described his objection to the enhancement in terms of § 2K2.1(b)(5). The following colloquy occurred:

> [DEFENSE COUNSEL]: ... I believe ... that in [PSR ¶] 12 four additional offense levels were added, because under 2K2.1(b)5 the defendant was alleged to have *possessed* this weapon in connection with another offense.
>
> Well, that's simply not the facts here. The only information that grants any credence to that or even any mention of it is from the defendant's ex-wife.... *This gun has never been alleged by any law enforcement officer or the United States attorney to have been used in another crime. And for that, Your Honor, we would object.*
>
> THE COURT: It appeared to me from the presentence report that *at the same time that the defendant was possessing this gun that he was possessing controlled substances*. It would appear to the Court that that [*firearm*] *possession was then during the commission of another felony*. So

3

The district court, however, sustained Condren's objection to not being granted a § 3E1.1 acceptance of responsibility adjustment. As a result, and pursuant to a recent amendment that allowed a maximum of three, rather than two, points for the adjustment, the court reduced the offense level by three points to

that objection is overruled.

(Emphasis added.)

Based on this exchange, however, the objection to the § 2K2.1(b)(5) enhancement was arguably not raised adequately in the district court. It was based only on Condren's assertion that he had not *used* the firearm in connection with another offense, whereas the district court's conclusion that the § 2K2.1(b)(5) enhancement applied was based on its finding, under the subsection's alternative ground, that Condren *possessed* it. Condren's counsel never addressed the firearm possession basis for the enhancement, which is mandated if the firearm is either used *or* possessed in connection with another felony. Nor did he object to the court's possession finding. Had he done so, the district court would have had the requisite opportunity to further address this point, and, therefore, possibly save this issue from being the possible basis for a remand for resentencing.

In short, it is arguable that the issue was not properly preserved in district court; if it was not, it would be reviewed here only for plain error. *See, e.g.*, **United States v. Olano**, ___ U.S. ___, 113 S. Ct. 1770 (1993); **United States v. Rodriguez**, No. 93-7291, 1994 WL 49536 (5th Cir. Feb. 18, 1994); Fed. R. Crim. P. 52(b). In this instance, however, we fully review the issue, because, as discussed *infra* at note 8, it is here (took its present form) on instructions from our court, as contained in the order denying Condren's counsel's **Anders** motion to withdraw.

4

25.[6]  The ensuing guideline range was 110 to 137 months.[7]  Condren was sentenced to 120 months imprisonment, to be followed by a three-year term of supervised release.

## II.

As noted, only the sentence enhancement is in issue.  It goes without saying that, in reviewing "sentences, we examine factual findings subject to the `clearly erroneous' standard ... and ... accord great deference to the trial judge's application of the sentencing guidelines."  *United States v. Humphrey*, 7 F.3d 1186, 1189 (5th Cir. 1993) (citing *United States v. Martin*, 893 F.2d 73, 74 (5th Cir. 1990) and *United States v. Mejia-Orosco*, 867 F.2d 216, 218 (5th Cir.), *clarified*, 868 F.2d 807, *cert. denied*, 492 U.S. 924 (1989)).  The sentence will be upheld unless, *inter alia*, "`it was

---

[6]  Condren's PSR, prepared in September 1992 using the 1991 Sentencing Guidelines, recommended against an acceptance of responsibility adjustment.  Condren's objection asserted that he should receive a full three-point adjustment, pursuant to the amendments to the Guidelines effective November 1, 1992.

Because Condren was sentenced on November 19, 1992, the 1992 amendments were applicable.  They provide, as did the 1991 Guidelines, for a two-point adjustment if the defendant "clearly demonstrates acceptance of responsibility".  U.S.S.G. § 3E1.1(a).  Under the 1992 amendments, however, defendants whose offense level is 16 or greater and who qualify under § 3E1.1(a) may also receive an additional one-point adjustment, if they have "assisted authorities in the investigation or prosecution of [their] own misconduct".  U.S.S.G. § 3E1.1(b).  This assistance may be shown, *inter alia*, by the defendant's timely entering a plea of guilty.  U.S.S.G. § 3E1.1(b)*; see United States v. Tello*, 9 F.3d 1119, 1123-24 (5th Cir. 1993) (construing § 3E1.1(b)).  In awarding Condren the full three points, the district court stated that the additional (third) point was included because of "the timeliness of [Condren's guilty] plea."

[7]  But, again Condren could not be given a term of imprisonment greater than the statutory maximum of 10 years.  *See* U.S.S.G. § 5G1.1(c), 18 U.S.C. §§ 922(g), 924(a)(2).

5

imposed ... as a result of an incorrect application of the ... guidelines....'" **United States v. Haymer**, 995 F.2d 550, 552 (5th Cir. 1993) (quoting **United States v. Howard**, 991 F.2d 195, 199 (5th Cir.), *cert. denied*, __ U.S. __, 114 S. Ct. 395 (1993)); *accord*, **Humphrey**, 7 F.3d at 1189 (quoting **Mejia-Orosco**, 867 F.2d at 218, and citing 28 U.S.C. § 3742(e)(1)).

Consistent with this court's order detailing the issues to be presented, Condren challenges the § 2K2.1(b)(5) enhancement.[8]  It

---

[8]  Pursuant to **Anders v. California**, 386 U.S. 738 (1967), Condren's counsel (federal public defender) filed a motion to withdraw and supporting brief, maintaining that this case presented no non-frivolous issues.  Among other things, the brief asserted that § 2K2.1(b)(5) had been properly applied, but it did not address the issue raised now: the construction to be given possession "in connection with another felony offense".  Upon receiving, from our court, the requisite notice of the withdrawal submission, **Anders**, 386 U.S. at 741, Condren responded that, *inter alia*, the district court had erred in enhancing his sentence for possession of a firearm in connection with another felony for which he had not been convicted.  (As discussed in note 11, *infra*, a conviction for the other felony is not required.)

Accordingly, although both Condren and his counsel addressed the § 2K2.1(b)(5) enhancement, neither raised the issue now before us.  Moreover, as discussed, it was arguably not presented in the district court.  *See supra* notes 4-5.

Of course, the duty to raise issues for appeal is usually counsel's, rather than the court's.  Indeed, under **Anders**, counsel has an affirmative duty to advise the court of *any* non-frivolous issues that, even arguably, could support an appeal.  **Anders**, 386 U.S. at 741, 744; **Lofton v. Whitley**, 905 F.2d 885, 887 (5th Cir. 1990), *citing and quoting* **Anders**, 386 U.S. at 744, and **Penson v. Ohio**, 488 U.S. 75 (1988).  Certainly, an issue of first impression, such as the one we consider now, should be brought to the court's attention.

Nevertheless, if counsel does not find a non-frivolous issue after a "conscientious examination of the case", **Lofton**, 905 F.2d at 887, the duty to examine the case for issues shifts to the court.  In such cases,

> the court -- not counsel -- then proceeds, after a

6

is mandated if, among other things, the "defendant *used or possessed* [the] firearm ... in connection with another felony

---

        full examination of all the proceedings, to decide whether the case is wholly frivolous.... [I]f it finds any of the legal points arguable on their merits (and therefore not frivolous), it must, prior to decision, afford [appellant] the assistance of counsel to argue the appeal.

*Anders*, 386 U.S. at 744; *e.g.*, *Moss v. Collins*, 963 F.2d 44, 46-47 (5th Cir. 1992) (citing cases), *cert. denied*, ___ U.S. ___, 113 S. Ct. 983 (1993).

      Upon such review, our court found the non-frivolous issue we now address. Indeed, research revealed no previous cases from this circuit construing the relevant language of § 2K2.1(b)(5). **United States v. Hernandez**, No. 91-8249 (5th Cir. Feb. 26, 1992) (unpublished), construed somewhat similar language in § 2K2.1(c)(1); but, as noted, that section provides a cross-reference provision for, *inter alia*, firearm use or possession "in connection with the *commission or attempted commission of another offense*" (emphasis added); Condren was not sentenced under it. As shown, the language of § 2K2.1(c)(1) differs from that of § 2K2.1(b)(5).

      Therefore, our court denied the motion to withdraw, and ordered counsel to file a brief addressing § 2K2.1(b)(5), as detailed below, "as well as any other non-frivolous issues [counsel] chooses to raise". The court stated:

> A review of the record reveals that the issue of whether the district court correctly found that Condren's offense level should be increased by four points under U.S.S.G. § 2K2.1(b)(5) for use or possession of a firearm in connection with another felony offense is not frivolous under <u>Anders</u> .... Whether the evidence is sufficient to show that Condren used or possessed the firearm in connection with the offense of distribution of cocaine is not a frivolous issue. Whether the presence of the drugs and the firearm in the same room is sufficient to show use or possession of a firearm in connection with the offense of felony possession of controlled substances under § 2K2.1(b)(5), as opposed to § 2K2.1(c)(1), is not a frivolous issue. See <u>United States v. Hernandez</u> ....

After the supplemental brief was filed, the case was placed on the oral argument calendar, because of the issue of first impression.

offense".[9]  Condren contends that the government failed to show that his firearm possession was "in connection with," *i.e.*, in any way related to, his commission of "another felony".[10]  Therefore, we must first identify the other felony employed in the district court's enhancement calculus.

## A.

The PSR states that Condren possessed the firearm in connection with distribution of cocaine:

> U.S.S.G. § 2K2.1(b)(5) requires that if the defendant possessed a firearm in connection with another felony offense, four-levels should be added.  The defendant was in possession of a firearm while involved in the distribution of crack/cocaine.  Therefore, four-levels are added.

In response to Condren's written (apparent) objection to this, the Probation Officer stated only that "section [2K2.1(b)(5)] ha[d] been appropriately applied."

As stated, at sentencing, except for its finding acceptance of responsibility, the district court adopted the findings in the PSR.

---

[9]    The section states:

> If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase [the base offense level] by **4** levels.  *If the resulting offense level is less than level **18**, increase to level **18**.*

U.S.S.G. § 2K2.1(b)(5) (emphasis added).

[10]   As noted, however, in objecting at sentencing to the enhancement, Condren's counsel referenced "use", not "possession": "This gun has never been alleged by any law enforcement officer or United States attorney to have been used in another crime."

Thus, it adopted the finding that Condren possessed the firearm "while involved in" drug distribution.[11]  *See* **United States v. Sherbak**, 950 F.2d 1095, 1099 (5th Cir. 1992) (court need not explicitly adopt individual findings, but may adopt PSR as a whole).

But also, at sentencing, see note 5, *supra*, the district court found that Condren possessed the firearm "at the same time that ... he was possessing controlled substances.  It would appear to the Court that that [firearm] possession was then during the commission of another felony".  Accordingly, it found  that Condren possessed the firearm while in possession of small quantities of crack and marijuana seed,[12] and determined that this possession was a felony, because he had been convicted previously of a narcotics offense.[13] 21 U.S.C. § 844(a); 28 C.F.R. §§ 76.1, 1316.91(c).  As Condren conceded at oral argument in our court, the district court did not err in ruling that, for enhancement purposes, Condren's drug possession was a felony.[14]

---

[11]    Of course, the defendant need not be charged with or convicted of the other felony used as the basis for the enhancement. U.S.S.G. § 2K2.1, comment. (n.7).

[12]    Contrary to Condren's contention, the finding by the district court that Condren possessed the firearm and drugs at the same time is not a rejection of the PSR's finding that he possessed the firearm while involved in drug distribution. *See* **Sherbak**, 950 F.2d at 1099.   The court's drug possession finding constitutes an addition to, not a rejection of, the PSR drug distribution finding.

[13]    The PSR contained ample evidence of Condren's previous narcotics convictions; and the district court noted that it was aware of them.

[14]    But, although counsel conceded this point at oral argument, it was raised as an issue in the supplemental brief, filed after we

Therefore, the district court found that Condren was engaged in both drug felonies -- possession and distribution; the enhancement is triggered if Condren possessed the firearm "in connection with" either.  Hence, we turn to the issue before us: the relationship that must exist between firearm possession and the other felony; specifically, the construction to be given "in connection with".

B.

We first examine Condren's firearm and drug possession.[15] Neither the district court nor the PSR defines the phrase "in connection with", or otherwise discusses the construction to be given it.  But, the PSR, which the district court adopted, does use the phrase in explaining the enhancement.  In ruling against the enhancement objection, the district court found that Condren possessed the firearm "at the same time that" he was possessing drugs; that the firearm possession "was then during the commission of another felony."  Similarly, the adopted PSR finding was that Condren possessed the firearm "while involved in" the distribution of cocaine.  (The district court's findings of fact -- *i.e.*, that

denied the **Anders** motion to withdraw.  *See supra* note 8.  The supplemental brief contended that the district court had "erroneously assumed" that Condren's possession of controlled substances was a felony.  This contention was meritless.  The district court's finding was, as noted, neither erroneous nor an "assumption".  Rather, it was based properly on evidence contained in the PSR, to which the court expressly referred. *See supra* note 13.

[15]    Obviously, because we conclude that the firearm was possessed in connection with the drug possession, we need not reach whether the enhancement would also have been proper based on the drug distribution.

Condren possessed the firearm while engaged in both drug possession and distribution -- are, as stated, reviewed only for clear error.) Therefore, in imposing the enhancement, the district court implicitly concluded that the firearm possession was in connection with the drug possession.

1.

"Connection" is defined as a "causal or logical relation or sequence". **Webster's Ninth New Collegiate Dictionary** 278 (1990). Condren contends that "in connection with" requires the government to establish a "nexus" between his firearm and drug possessions, and that it is lacking because the drug quantity -- .1 gram of cocaine and 33.3 grams of marijuana seed -- is consistent with personal use and too small to support a conclusion that he possessed the firearm in order "to protect" the drugs. In addition, giving Condren's contention a very liberal reading, he seems to assert that the absence of the nexus is demonstrated further by the facts that the firearm was in a drawer (allegedly locked) and was kept only as collateral for a loan, rather than for any purpose related to drug possession.[16]

---

[16] Condren's wife filed for divorce approximately six weeks after Condren was arrested. In an interview with the probation officer who prepared the PSR, she stated that Condren periodically carried the firearm with him when he left their house. Condren objected to the use of this statement, stating that his ex-wife had "made all that up and has used it as vendetta to try to get him as much time in federal court as possible." The court required that the PSR "be supplemented to indicate the defendant's extreme disagreement with the statements of his ex-wife." It noted, however, that "[i]t doesn't appear to the Court that any of the statements of the wife resulted in raising the guideline levels for the defendant." As discussed *infra*, the enhancement is amply supported by the record, regardless of whether Condren carried the firearm outside the

11

The phrase "in connection with" for § 2K2.1(b)(5) purposes is not defined in the Guidelines; and, as noted, our circuit has not squarely addressed the issue. The nexus requirement that Condren urges is borrowed from 18 U.S.C. § 924(c) (proscribing the *use or carrying* of a firearm "*during and in relation to* any crime of violence or drug trafficking crime" (emphasis added)). *See*, *e.g.*, **United States v. Pace**, 10 F.3d 1106, 1117-18 (5th Cir. 1993) (applying § 924(c)); **United States v. Capote-Capote**, 946 F.2d 1100, 1104 (5th Cir. 1991), *cert. denied*, __ U.S. __, 112 S. Ct. 596 (1992) (same). Although, as the Tenth Circuit has noted, the standard of proof required under § 924(c) "provides some guidance" in construing § 2K2.1(b)(5), **United States v. Gomez-Arrellano**, 5 F.3d 464, 466 (10th Cir. 1993), we decline to adopt it as the controlling standard.

First, § 924(c) expressly proscribes the *use or carrying* of a firearm *during or in relation to* a drug trafficking crime or crime of violence; in contrast, § 2K2.1(b)(5) mandates an enhancement even if the defendant *only possesses* a firearm in connection with *any* other felony. U.S.S.G. § 2K2.1(b)(5); *see* **United States v. Sanders**, 990 F.2d 582, 585 (10th Cir.) (rejecting defendant's contention that § 924(c) standard should control § 2K2.1(b)(5) determination), *cert. denied*, 114 S. Ct. 216 (1993).[17]

---

house. Mrs. Condren's statement, however, undermines his possible contention that the firearm could not have been in connection with his drug-related activities because it remained at all times in the desk drawer.

[17]     The Tenth Circuit, one of the few to address "in connection with" for § 2K2.1(b)(5) purposes, appears to have taken two

12

Second, § 924(c) is a criminal statute, requiring that the government prove, beyond a reasonable doubt, the relationship of the firearm to the drug trafficking crime or the crime of violence. *Pace*, 10 F.3d at 1117. In contrast, because the subsection in issue is under the Sentencing Guidelines, the relationship need be proved only by a preponderance of the evidence. *United States v. Angulo*, 927 F.2d 202, 205 (5th Cir. 1991); *United States v. Kinder*, 946 F.2d 362 (5th Cir. 1991), *cert. denied*, __ U.S. __, 112 S. Ct. 2290 (1992), *cited in* *United States v. Mergerson*, 4 F.3d 337, 343 (5th Cir. 1993), *petition for cert. filed* (U.S. Dec. 21, 1993) (No. 93-7246).

The government urges that we construe the enhancement phrase according to its literal and straightforward meaning.[18] *See*

_____

somewhat disparate positions. As discussed, in *Gomez-Arrellano*, 5 F.3d at 466-67, its more recent (Sept. 1993) pronouncement on the issue, it held that 18 U.S.C. § 924(c) was "more closely analogous" to § 2K2.1(b)(5) than was U.S.S.G. § 2D1.1(b) (enhancement when firearm "was possessed" during drug trafficking offense). But, as also noted, in *Sanders*, 990 F.2d at 585 (Apr. 1993), it had previously "reject[ed] at the outset defendant's suggestion that" it should apply § 924(c)'s standard to § 2K2.1(b)(5). Instead, it analogized § 2K2.1(b)(5) to § 2D1.1. *See* *United States v. Brewster*, 1 F.3d 51, 53-55 (1st Cir. 1993) (following *Sanders*). Given this apparent inconsistency, and the fact that *Gomez-Arrellano* does not hold that § 924(c)'s standard is controlling, we do not perceive our decision in this case to create a split between the circuits. This is especially true in light of our February 1992 unpublished opinion in *Hernandez*, *see supra* note 8, which construed § 2K2.1(c)(1)'s similar language. *Hernandez*, decided over a year before either *Sanders* or *Gomez-Arrellano*, held that, for § 2K2.1(c)(1) purposes, primarily because the firearm was simply found in the same room as drugs, it was used "in connection with" their possession. *Hernandez*, slip op. at 2.

[18] In so doing, the government also refers to the connection required between the firearm and the other offense as a "nexus". Although Condren uses this term to denote the relationship that 18 U.S.C. § 924(c) requires, the government uses it in a more generic

13

***Sanders***, 990 F.2d at 585 ("We think it appropriate to apply the phrase `in connection with' in a straightforward and literal fashion."). It maintains that, if we do, the enhancement will apply, because both the gun and the drugs were in Condren's possession at the same time and in close proximity to one another.

"In the absence of any statutory definition, we construe th[e] phrase [*i.e.*, "in connection with",] according to its ordinary and natural meaning." ***United States v. Guerrero***, 5 F.3d 868, 872 (5th Cir. 1993), *cert. denied*, 1994 WL 11576 (U.S. Feb. 22, 1994) (No. 93-7360) (construing "`in connection with' a crime of violence" language of U.S.S.G. § 4B1.4(b)(3)(A), and citing ***Smith v. United States***, __ U.S. __, __, 113 S. Ct. 2050, 2054 (1993); ***Perrin v. United States***, 444 U.S. 37, 43 (1979)). As noted in ***Guerrero***, the Supreme Court

> reads terms such as "used or possessed" quite expansively in the context of firearms. For instance, in order to prove a criminal defendant "use[d] a firearm ... during and in relation to any crime of violence or drug trafficking crime" for purposes of 18 U.S.C. § 924(c)(1), the government need not show the firearm was even "use[d] as a weapon."

***Id.*** at 872 (quoting ***Smith***, __ U.S. at __-__, 113 S. Ct. at 2053-54 (internal quotations omitted)). In ***Guerrero***, for purposes of § 4B1.4(b)(3)(A), we held that the defendant possessed firearms "in connection with" a burglary even where they were not used to commit the burglary, but were instead the fruits of it. ***Id.***

---

sense, to signify only the relationship that the guideline requires. This use is consistent with the general definition of "nexus", *i.e.*, a "connection, link". **Webster's Ninth New Collegiate Dictionary** 797 (1990).

14

In addition, as noted, other circuits have looked to U.S.S.G. § 2D1.1(b) (enhancement for possession of firearm during drug-trafficking crime) for guidance in interpreting § 2K2.1(b)(5). *See, e.g.,* **Gomez-Arrellano**, 5 F.3d at 466 (10th Cir. 1993); **Sanders**, 990 F.2d at 585 & nn. 2-3 (10th Cir.), *followed by* **Brewster**, 1 F.3d at 54 & n.4 (1st Cir.). They acknowledge, however, that § 2D1.1, like 18 U.S.C. § 924, is an imperfect analogy to § 2K2.1(b)(5) for at least two reasons.

First, § 2D1.1 mandates an enhancement whenever, in a crime involving the manufacture, import, export, trafficking, or possession of drugs, "a dangerous weapon (including a firearm) was possessed". Arguably, this language requires less of a relationship, or specific connection, between the possession of the weapon, and the drug offense. That is, § 2D1.1(b)(1) contains no language requiring that the possession of the weapon be "in connection with" (§§ 2K2.1(b)(5), 4B1.1(b)(3)(A)), or "in relation to" (18 U.S.C. § 924(c)) the other offense. Second, unlike § 2K2.1(b)(5), the commentary to § 2D1.1 sets a standard by which to judge the relationship between the firearm and the drug offense: the enhancement applies unless it is "clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.3); **Sanders**, 990 F.2d at 585 (noting "explanatory vacuum" accompanying § 2K2.1(b)(5), and declining to extend § 2D1.1's "clearly improbable" standard to it).

Nonetheless, similar policy reasons militate in favor of the enhancement provided by both § 2D1.1(b) and § 2K2.1(b)(5).

15

***Sanders***, 990 F.2d at 585; ***Guerrero***, 5 F.3d at 872 & n. 9 (discussing ***Sanders*** in context of analogy between § 2D1.1(b)(1) and "in connection with" language of § 4B1.4(b)(3)(A)). As does the original commentary to § 2K2, the commentary to § 2D1.1 "explains the enhancement for weapons possession ... as reflecting `the increased danger of violence'" that exists when guns and drugs are present together. ***Sanders***, 990 F.2d at 585 (discussing and comparing U.S.S.G. App. C, amend. 374 comment. (backg'd) (original commentary to § 2K2) with U.S.S.G. § 2K1.1(b)(1) comment. (n.3)).

Simply stated, the enhancement in issue reflects the undeniable fact that "[p]ossession of firearms obviously increases the *danger of violence* whether or not such weapons are actually used .... [I]t makes little difference how the [defendant] obtained [the] firearms." ***Guerrero***, 5 F.3d at 873 (emphasis in original). As much as in a drug trafficking crime, *e.g.*, ***Capote-Capote***, 946 F.2d at 1104, or a crime of violence such as burglary, ***Guerrero***, 5 F.3d at 873, this rationale applies in cases involving possession of a firearm while in possession of drugs.[19]

Section 2K2.1(c)(1) presents another useful, if imperfect, standard for comparison. As noted, it provides, as does § 2K2.1(b)(5), for an enhancement "[i]f the defendant used or possessed any firearm or ammunition in connection with" another offense. It specifies, however, that the firearm must be used or possessed in connection with "*the commission or attempted*

---

[19]    We reiterate that the enhancement is required not only for *use*, but also simply for *possession*, of a firearm in connection with another felony.  U.S.S.G. § 2K2.1(b)(5).

16

*commission* of another offense". U.S.S.G. § 2K2.1(c)(1) (emphasis added). The requirement that the firearm possession be in connection with the *commission* of another offense appears to mandate a closer relationship between the firearm and the other offense than that required for § 2K2.1(b)(5) purposes.

In other words, for § 2K2.1(b)(5) purposes, the connection could be even more remote and require less proof. Yet, in the only case from this circuit to address the issue (**Hernandez**, discussed *supra* at note 17,) we did not require a specific showing of a close relationship between the firearm and the drug possession. There, as noted, we affirmed a § 2K2.1(c)(1) enhancement based primarily on "undisputed evidence that the firearm *was found in the room with the marijuana*". **Hernandez**, No. 91-8249, slip op. at 2 (unpublished) (emphasis added). At bottom, in **Hernandez**, the simple physical proximity of the firearm to the drugs allowed the district court properly to "conclude that the firearm was *used in connection with* the possession of the marijuana." **Id.** (emphasis added).

In addition, it is well to remember that a sentencing enhancement is being construed; a "specific offense characteristic". Therefore, obviously, the purpose to be served by such an enhancement must guide our giving effect to the ordinary and natural meaning of the subsection. Specific offense characteristics, such as those described in § 2K2.1(b), represent the Sentencing Commission's attempt to consider "real offense" aspects of the underlying offense. **United States v. Manthei**, 913

17

F.2d 1130, 1134 (5th Cir. 1990), *citing and quoting* U.S.S.G. Ch. 1, Pt. A, intro., 4(a); *see also* U.S.S.G. Ch. 1, Pt. A, intro., p.s. (3) (Guidelines attempt to establish "proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity"). The Guidelines state that, although they are "closer to a charge offense [rather than a real offense] system", they

> take account of a number of important, commonly occurring real offense elements such as role in the offense, the presence of a gun, or the amount of money actually taken, through alternative base offense levels, specific offense characteristics, cross references, and adjustments.

U.S.S.G. Ch. 1, Pt. A, intro. p.s. 4(a); *see also* U.S.S.G. § 1B1.3, comment. (discussing consideration of relevant conduct in determining sentence). Specific offense characteristics represent an integral part of the Guidelines' "return[] ... to an earlier philosophy that the punishment should fit the crime...." ***Mejia-Orosco***, 867 F.2d at 218.

Chapter Two of the Guidelines relates to offense conduct; its Part K -- including § 2K2.1(b)(5) -- pertains to offenses "involving public safety", such as arson, use of explosives or firearms, and transportation of hazardous materials. Section 2K2.1 provides offense levels for unlawful receipt, possession, or transportation of firearms or ammunition. In 1991, the specific offense characteristic represented by the subsection in issue was added to the Guidelines (enacted in 1987). It was one of several changes to § 2K2 that reflect increased concern about firearms, crimes of violence, and drug offenses. Needless to say, the

18

unlawful use or possession of firearms represents an ever increasing assault on public safety; it is a clear and present danger. For example, 15,377 of the 22,540 murders in the United States in 1992 were committed with firearms, of which 1,144 concerned drugs. 1992 FBI **Uniform Crime Rep. for the United States** 20.

Finally, § 2K2.1(b)(5) mandates that if the resulting offense level -- after the enhancement is applied -- is less than 18, it must be increased to that level. U.S.S.G. § 2K2.1(b)(5); *see* note 9, *supra*. This is yet another indication that the enhancement represents an intention to impose a significantly heavier sentence, regardless of the other offense (felony).

Under the ordinary and natural meaning of "in connection with" as found in § 2K2.1(b)(5), especially as informed by the above discussion, we cannot credit either Condren's contention that the quantity of drugs involved was too small, or the possible contention that the source of the firearm was too unrelated, to support the  enhancement.

a.

As to the quantity, it must be kept in mind that Condren was actively involved in distributing cocaine; it would be more than reasonable to infer that he would know, or assume, that other persons would know, or assume, that he kept drugs in his home, and that he would be concerned that those persons might seek to steal them. (No authority need be cited for the fact that theft is a

19

close and ever present partner of illegal drugs, either to steal the drugs, or to steal money or other items to purchase them.)

Therefore, as discussed *infra*, it would likewise be more than reasonable to infer that Condren possessed the firearm in order to protect even the small amount of drugs kept, or intended, for his personal use. *See* **United States v. Martinez**, 808 F.2d 1050, 1057 (5th Cir.) ("Firearms are `tools of the trade' of those engaged in illegal drug activities."), *cert. denied*, 481 U.S. 1032 (1987). In any event, § 2K2.1(b)(5) does not specify that a certain amount of drugs are required to support the enhancement. Indeed, it is mandated whenever a firearm is possessed in connection with *any* other felony, regardless of whether it involves drugs. U.S.S.G. § 2K2.1(b)(5).[20]

Moreover, Condren's assertion that § 2K2.1(b)(5) is not applicable, in this case, because only a small amount of drugs was involved, and was kept only for his personal use, is unsupported by the case law he relies on.[21] The § 2D1.1 cases Condren cites are

---

[20]  At oral argument, Condren's counsel argued that to allow the enhancement on the claimed unconnected firearm and drug possessions in this case will open the door to similar enhancements for any felony so long as a firearm is also possessed, offering as examples felonies not generally associated with firearms, such as bank fraud. Needless to say, this assertion, which was not presented in Condren's briefs and therefore arguably need not be addressed, has some facial appeal, but no merit. The connection between the firearm and the other felony must be proved.

[21]  With regard to this issue, Condren cites **United States v. Aguilera-Zapata**, 901 F.2d 1209 (5th Cir. 1990) (defendant pleaded guilty to possession with intent to distribute over 100 kilograms of marijuana; district court applied § 2D1.1(b)(1) because co-defendant possessed loaded revolver, and this court remanded to determine whether co-defendant's possession of weapon was reasonably foreseeable to defendant); **United States v. Molinar-**

20

inapposite; that they happen to involve larger quantities of drugs than does this case is perhaps due to the fact that § 2D1.1 pertains specifically to offenses involving drugs, including drug manufacture, import, and trafficking.

In contrast, as noted, § 2K1.1(b)(5) enhancements may be based on *any* felony, including, as here, felony possession of a small amount of drugs. *See **Sanders***, 990 F.2d at 583, 585 (enhancement applied where defendant possessed firearm in connection with drug trafficking; defendant was carrying 7 grams of cocaine, 33.7 grams of heroin, and assorted drug paraphernalia); *see also **United States v. Rivera***, 898 F.2d 442, 445-46 (5th Cir. 1990) (leaving open possibility that, on remand, defendant could receive enhanced sentence under § 2D1.1(b) for possession of firearm during possession of as little as .37 grams of heroin).

b.

As to the possible contention that the firearm was simply collateral for a loan, instead of being possessed for Condren's drug-related activities, we reiterate that the enhancement provision speaks to the real and obvious increase in the risk of violence (threat to public safety) through the mere possession of firearms in connection with drugs. *See **Guerrero***, 5 F.3d at 873.

---

***Apodaca***, 889 F.2d 1417, 1424 (5th Cir. 1989) (presence of Uzi rifle, handgun, and ammunition "at the time when a considerable quantity of marijuana was seized on the premises" supported 18 U.S.C. § 924(c) conviction); ***United States v. Robinson***, 857 F.2d 1006, 1010 (5th Cir. 1988) (jury could reasonably conclude that possession of firearms was integral part of felony of possessing cocaine with intent to distribute, where availability of firearm increased likelihood that criminal undertaking would succeed).

This increased risk obviously exists regardless of whether the weapons are used, and regardless of how, or why, they were obtained, or for what other reasons they are possessed. *Id.*

2.

We turn now to the findings of fact and conclusion of law concerning the connection. As stated, a finding is upheld unless it is clearly erroneous -- it is implausible in light of the record as a whole. *E.g. United States v. Martinez-Moncivais*, No. 92-5593, 1994 WL 38657 at *8 (5th Cir. Feb. 11, 1994) (citing *United States v. Sanders*, 942 F.2d 896, 897 (5th Cir. 1991)).

Condren's firearm "was found in the same location where drugs or drug paraphernalia [we]re stored or where part of the transaction occurred." *United States v. Hooten*, 942 F.2d 878, 882 (5th Cir. 1991) (construing § 2D1.1, and citing cases). It was in close "physical proximity to narcotics", *Gomez-Arrellano*, 5 F.3d at 466-67 (10th Cir. 1993) -- in a drawer of the very desk where the drugs were found. *Furthermore, it was fully loaded*. Regardless of how it came into Condren's possession, it was readily available to him to protect his drug-related activities; and, based on our review of the record, the district court implicitly finding this was not clearly erroneous.[22]

Therefore, the district court did not err, as a matter of law, in concluding that the firearm possession was "in connection with"

---

[22] As noted, Condren asserts that the drawer was locked. He does not, however, contend that he could not unlock it, or that the firearm was otherwise unavailable to him. The record does not contain evidence on either point, except for his stating to the probation officer that the drawer was locked.

22

the drug possession.  *See* **Hernandez**, No. 91-8249, slip op. at 2 (concerning § 2K2.1(c); "From the undisputed evidence that the firearm was found in the room with the marijuana, the court could conclude that the firearm was used in connection with the possession of the marijuana."); **United States v. Thomas**, 12 F.3d 1350, ____ (5th Cir. 1994) (under 18 U.S.C. § 924(c), government need only show that gun was available to provide protection to defendant's drug activity); and **Pace**, 10 F.3d at 1117-19 (construing 18 U.S.C. § 924(c) and quoting **Capote-Capote**, 946 F.2d at 1104 ("Weapons in the home may facilitate a drug crime because the defendants *could* use the guns to protect the drugs".) (emphasis in **Pace**; citations omitted)).

## III.

Accordingly, the court correctly applied § 2K2.1(b)(5).  The sentence is

**AFFIRMED.**