79 F.3d 1150
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Emory Scott YOUNG, Defendant-Appellant.
 No. 95-2626.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 13, 1995.
Decided March 14, 1996.
 
 Before ESCHBACH, COFFEY and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Emory Scott Young pleaded guilty to being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). At sentencing he received a four-level enhancement under U.S.S.G. § 2K2.1(b)(5) (1994) for possessing the firearm with knowledge, intent, or reason to believe that it would be used in connection with another felony offense, here, drug trafficking.[1] Young appeals his sentence, arguing the four-level enhancement does not apply because the government failed to show a sufficient nexus between his possession of the firearm and drug (cocaine) trafficking. Young maintains that he possessed the gun for self-defense and not "in connection with" another felony offense.
 
 
 2
 Young, a convicted felon, suffered a gang-related, gunshot injury to his head on April 1, 1994. On the way to the hospital, paramedics found a firearm in his pants pockets. On May 3, 1994, Young was recuperating at his parent's home when police officers arrested him pursuant to a warrant for the illegal possession of a firearm on April 1, 1994. As Young got out of bed, the arresting officers noticed a gun partially hidden beneath Young's pillow. Young indicated that someone had given it to him for protection. Young's admitted possession of this gun (it turned out to be stolen) resulted in a second count under 18 U.S.C. § 922(g)(1). Young pleaded guilty to this charge, and the government dropped the original charge for possessing a firearm on April 1, 1994.
 
 
 3
 The district court increased Young's base offense level four points under U.S.S.G. § 2K2.1(b)(5) based upon testimony presented at the sentencing hearing.[2] Detective William McEvilly of the Indianapolis police department testified to Young's reputation as a leader of a drug distribution gang in Indianapolis. In part, Young's reputation stemmed from his 1992 theft conviction entered after police seized six stolen firearms, cocaine and marijuana from Young's residence. McEvilly also testified to Young's personal admissions made on the night of his arrest of being in the drug trafficking business. Specifically, Officer McEvilly testified that Young admitted that he was in the cocaine trafficking business, that he planned to get out when he made a million dollars, that he had made a few hundred thousand so far, and that he could get ten to twenty kilos of cocaine fronted to him (on a good-faith basis without payment) at one time. Officer McEvilly further testified that on the way to the police station Young told him that the reason he was shot on April 1, 1994, was because he was "set up" due to some problems within "the Association," a gang known by the Indianapolis police for its drug dealings. When asked why he did not withdraw from the "Association" given its internal problems, Young responded that he would withdraw "when he made a million." Id.
 
 
 4
 Contrary to the officer's testimony indicating Young's continued drug trafficking involvement, Young testified that although he had been involved in drug trafficking in the past, he had gotten completely out of it prior to 1992. Nevertheless, Young admitted that he had been arrested in 1994 on three occasions where he was found to be carrying large sums of money in cash, together totaling $11,700. He denied that this money or his Mercedes (claimed to be rented from a person he only knew as "Don") was from drug trafficking. Yet he did not testify to any legitimate means of employment or sources of this large amount of cash. Moreover, he testified that he "did not deny" but that "he could not remember" whether he told McEvilly that he would get out of drug trafficking after he "made a million." He denied telling McEvilly that his gunshot injury occurred because of problems within his drug trafficking gang.
 
 
 5
 The district court discounted Young's testimony denying his continued involvement in drug trafficking. The judge found that Young testified falsely when he testified "under oath that the source of that money was not drug-trafficking." The judge stated it was reasonable to infer that the source of the cash found on Young in 1994 was from drug trafficking, that the Mercedes was utilized in drug activities, and that Young's testimony reflected a clear knowledge of drug activity and involvement. The court found that Young's incriminating statements made on the night of his arrest corroborated other information the police already had concerning Young's drug trafficking activities. The court also disbelieved Young's claim that he possessed the gun only for safety purposes rather than for drug-related activities: "While it could be referred to as being possessed for protection, what was being protected by it was Mr. Young's involvement in drug-trafficking and the continuation of that and concern about retaliation or additional physical actions being taken against him because of drug-trafficking." For these reasons, the district judge enhanced Young's sentence for possessing a firearm in connection with drug trafficking.
 
 
 6
 "[C]redibility judgments of witnesses are left to the sound discretion of the district court." United States v. Campbell, 985 F.2d 341, 347 (7th Cir.1993). See also Anderson v. Bessemer City, 470 U.S. 564, 574 (1985) (fact finder's choice between two permissible choices cannot be clearly erroneous). Hence we accept the court's finding concerning Young's continued involvement in drug trafficking. Our review, therefore, is limited to determining whether the district court had sufficient evidence to find by a preponderance that Young possessed the firearm, knowing, intending, or reasonably believing that it would be used or possessed in the commission of drug trafficking. See U.S.S.G. § 2K2.1(b)(5). Unless clearly erroneous, we must affirm the district court's factual finding that Young possessed the firearm "in connection with" drug trafficking. United States v. Messino, 55 F.3d 1241, 1256 (7th Cir.1995).
 
 
 7
 Young argues that the evidence fails to show, even under a deferential review, that his possession of the firearm was sufficiently connected with drug trafficking to support an enhancement under U.S.S.G. § 2K2.1(b)(5). Young contends that the question concerning the required connection between the relevant conduct and the crime charge is unresolved in this circuit. This contention is not true. We have addressed this issue before and have upheld a district court's judgment that a firearm was used "in connection with" another felony offense where a defendant sold or transferred weapons for drugs (or for money to buy drugs), Messino, 55 F.3d at 1255-56, and where a felon's history of losing guns supported an inference that he knew that the lost gun would later be used in a felony, United States v. Gilmore, 60 F.3d 392, 393-94 (7th Cir.1995). We have also interpreted similar language found in 18 U.S.C. § 924(c)(1) and found that where a firearm is found within close proximity of a drug stash, it is held "during and in relation to" another felony offense. United States v. Jackson, 65 F.3d 631 (7th Cir.1995); accord United States v. Condren, 18 F.3d 1190 (5th Cir.), cert. denied, 115 S.Ct. 161 (1994) (gun's presence near drugs helps prevent their theft). By contrast, Young did not sell or lose the firearm at issue, and the record does not indicate that any drugs, cash, or drug-related paraphernalia were found in proximity to the firearm.
 
 
 8
 Whatever the required connection in this factual situation, the government need not show a direct nexus between the weapon possessed and the other felony offense. United States v. Rogers, 46 F.3d 31, 33 (7th Cir.), cert. denied, 115 S.Ct. 1712 (1995) (refusing to require a direct nexus between the possession by the defendant and a future felony offense when the defendant has "reason to believe" that a firearm will be used or possessed in another felony). Sentencing Guideline § 2K2.1(b)(5) does not require knowledge of the specific offense to be committed, nor does it require that the defendant be convicted of the other felony offense. See U.S.S.G. § 2K2.1, comment (n. 7). Furthermore, even if Young did possess the firearm in part for self-protection, this does not make an enhancement inapplicable if the record also supports the district court's determination that he possessed it for an illegal purpose.
 
 
 9
 The district court relied on Young's unexplained possession in 1994 of large sums of cash and his unexplained possession of a high-priced automobile in finding that Young was still in the drug trade. The court also heard testimony from Officer McEvilly that firearms were routinely found in connection with drug trafficking activities. Likewise, we have recognized that firearms are tools of the drug trade. See United States v. Singer, 943 F.2d 758, 762 (7th Cir.1991) (citing cases finding a relationship between firearm possession and drug trafficking). The court also found that Young's concern for retaliation stemmed from his ongoing involvement in drug activities (finding that Young possessed the firearm to protect his continued involvement in drug trafficking and to protect himself from retaliation because of his continued drug trafficking). In a similar situation, the tenth circuit found that a defendant possessed a firearm "in connection with" drug trafficking where although no drugs were found on the defendant during the arrest, the defendant's girlfriend testified that he was involved in drug trafficking in the past and that he carried the firearm for "protection." See United States v. Draper, 24 F.3d 83, 84-85 (10th Cir.1994).
 
 
 10
 Young argues that the enhancement does not apply unless the relevant conduct (here, drug trafficking) was part of the same conduct as the offense of conviction. See United States v. Baldwin, 5 F.3d 241 (7th Cir.1993) ( Baldwin II ). In Baldwin II we acknowledged our earlier decision rejecting an enhancement under U.S.S.G. § 2D1.1(b)(1) (Oct.1988). See id. at 242 (discussing United States v. Baldwin, 956 F.2d 643 (7th Cir.1992) (Baldwin I )). Baldwin I relied on our finding that Baldwin's action of assaulting an undercover officer (to whom he had sold drugs on other occasions) was not part of the same conduct of drug trafficking for which he was convicted. Id. at 242. Significantly, Baldwin I interpreted an earlier version of U.S.S.G. § 2D1.1 that required the government to prove that the defendant possessed the dangerous weapon during the offense of conviction. Id. at 243 n. 3. Thus, although U.S.S.G. § 2D1.1 involves enhancement for drug offenses, it is not instructive here since it deals with an outdated guideline provision that contained entirely different language than U.S.S.G. § 2K2.1(b)(5).
 
 
 11
 Young also relies on United States v. Fadipe, 43 F.3d 993 (5th Cir.1995), for his argument that U.S.S.G. § 2K2.1(b)(5) requires a more significant nexus than found by the district court. In Fadipe, the Fifth Circuit required the government to show a more significant connection than proximity between the defendant's firearm possession and fraudulently obtained bank checks. Since the checks were issued in Fadipe's name, the court reasoned that it was reasonable to infer that the firearm was needed to protect the checks from theft. Significantly, the court noted that different reasoning applied in drug cases such as in Condren, 18 F.3d at 1198-1200, where it inferred that a firearm's proximity to a drug stash is for protection of the stash. We fail to see how Fadipe supports Young's argument, especially given Fadipe's lack of relevance to drug-related cases.
 
 
 12
 Young also maintains that under United States v. Pantelakis, 58 F.3d 567 (10th Cir.1995), no enhancement is warranted because he only used the firearm for self-defense. Unlike Pantelakis, id. at 568 ("The unrefuted, uncontradicted testimony ... is that [the defendant] purchased the weapon for self-protection purposes"), the district court clearly rejected Young's argument that he only used the firearm for self-defense unrelated to drug trafficking activities. Thus, Young's reliance on Fadipe and Pantelakis fails to give us any reason to second-guess the district court's credibility determination that Young possessed the firearm with reason to believe it would be used in connection with drug trafficking. See Draper, 24 F.3d at 84-85. Accordingly, we affirm Young's four-level enhancement under § 2K2.1(b)(5).
 
 
 
 [1]
 A four level enhancement applies to the base offense level (1) where a defendant "used or possessed any firearm ... in connection with another felony offense; or (2) where a defendant "possessed or transferred a firearm ... with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(5)
 
 
 [2]
 The base offense level for Young's offense is 14. See U.S.S.G. § 2K2.1. The court also ordered a two-level upward adjustment because the firearm in question was stolen, U.S.S.G. § 2K2.1(b)(4), and another two levels because Young obstructed justice by denying his involvement in drug trafficking, U.S.S.G. § 3C1.1. "The reasonable inference to be drawn from the evidence regarding that vehicle [Mercedes] is that he utilized that in his drug business and that he obtained it through drug activities. So the obstruction previously committed by this defendant was compounded by his testimony today; and so two additional levels should be added for that reason so that the adjusted offense level is 22." (Tr. at 61, 62). Young's appeal does not challenge these enhancements