UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-8358
_____


UNITED STATES OF AMERICA,

                                  Plaintiff-Appellee,

                    versus

BENNY GUERRERO,

                                  Defendant-Appellant.

_____

Appeal from the United States District Court for the
            Western District of Texas
_____

(October 18, 1993)

Before GARWOOD, DAVIS and SMITH, Circuit Judges.

GARWOOD, Circuit Judge:

     Defendant-appellant Benny Guerrero (Guerrero) was convicted,
pursuant to his plea of guilty, of possession of a firearm by a
felon in violation of 18 U.S.C. §§ 922(g)(1) and  924(a) (count
one), and of possession of a stolen firearm in violation of 18
U.S.C. §§ 922(j) and 924(a)(2) (count two).  At the same time, he
pleaded "true" to the government's previously filed sentencing
enhancement information alleging three prior violent felony
convictions.  Guerrero was determined to be an armed career
criminal and was sentenced to concurrent terms of 240 months in
prison as to count one and 120 months in prison as to count two.

Guerrero now appeals the district court's application of the Sentencing Guidelines, although he failed to raise any such objection at his sentencing. Finding no plain error, we affirm.

## Facts and Proceedings Below

On January 22, 1992, Guerrero and Louis Beltran (Beltran), both convicted felons, burglarized two residences in Bell County, Texas. Both individuals entered the first home and removed a television set. Guerrero claimed that he waited in the car as a lookout while Beltran broke into the second residence and removed several items including a Winchester 30-30 caliber rifle and four shotguns.[1] Guerrero and Beltran transported the stolen firearms to the residence of their main "fence," Moses Resendez. On January 23, investigators from the McLennan County Sheriff's Department and the Waco Police Department observed Guerrero and Beltran at the Resendez residence. Resendez admitted they had placed stolen property in his residence and voluntarily signed a consent to search the premises and his car. Law enforcement officials found the five stolen firearms in the trunk of the car. On March 3, 1992, the Bureau of Alcohol, Tobacco and Firearms test-fired the weapons and found each to function properly.

The Presentence Investigation Report (PSI) indicated that, prior to January 1992, Guerrero had been convicted of several

---

[1] The versions of Guerrero and Beltran as reflected in the Presentence Investigation Report (PSI) differed considerably regarding Guerrero's participation in the second burglary. Guerrero's version was that he never entered the house, but merely loaded the firearms into the car upon Beltran's exit from the residence. Beltran stated that Guerrero used a screwdriver to break into the home, and both he and Guerrero carried the firearms from the residence.

2

violent felonies in McLennan County, Texas, including: robbery on September 6, 1984; burglary of a building on January 7, 1988; burglary of a habitation on October 11, 1989; and burglary of a building on October 11, 1989. The PSI also listed several other charges that were either dismissed or pending. In addition, the PSI indicated that Guerrero was on parole until June 3, 2014, for his sentences in the October 11, 1989, burglaries and that he committed the instant offenses within six months of his release from the Texas Department of Corrections on August 29, 1991. Based on his prior convictions and parole status, Guerrero's criminal history category was VI.[2]

The PSI determined Guerrero's base offense level to be thirty-four according to the armed career criminal guideline, U.S.S.G. § 4B1.4(b)(3)(A). Guerrero received a two-point reduction in offense level for acceptance of responsibility, leaving a total offense level of thirty-two.[3] The imprisonment range for a defendant with

---

[2]   Guerrero's criminal history score was fifteen. This represented three points for each of his four previous felony convictions, two points for committing the present offenses while on parole, and one point for committing the offenses less than two years after release from imprisonment. *See* U.S.S.G. § 4A1.1(a), (d), (e). A criminal history score of thirteen or more falls within criminal history category VI.

[3]   The PSI also calculated a total offense level of thirty-two based on the underlying charges of possession of a firearm by a felon and possession of a stolen firearm. Possession of a firearm by a felon carried a base offense level of twenty-four. U.S.S.G. § 2K2.1(b)(1)(B). The PSI added two points for possessing five firearms, two points for possessing stolen firearms, and two points for a multiple count adjustment. An additional four points were added because Guerrero possessed these firearms in connection with another felony offense, burglary of a habitation. U.S.S.G. § 2K2.1(b)(5). The resulting total offense level, after a two-point reduction for acceptance of responsibility, did not exceed the level calculated under the

3

a criminal history category of VI and a total offense level of thirty-two is 210-262 months. *See* U.S.S.G., Ch. 5, Part A. The district court sentenced Guerrero to 240 months in prison as to count one and 120 months as to count two, both sentences to run concurrently. Guerrero appeals only the application of the Sentencing Guidelines.

## Discussion

The sole issue raised on appeal is whether the district court erred in imposing a base offense level of thirty-four under U.S.S.G. § 4B1.4(b)(3)(A) based on its finding that Guerrero possessed the firearms in connection with a crime of violence, burglary of a habitation. Guerrero did not object to this finding below.[4] Thus, since the issue is raised for the first time on

armed career criminal guideline. Therefore, these calculations had no effect on Guerrero's sentencing.

[4]     In a document filed two weeks before sentencing entitled "Defendant's Commentary On Pre-Sentence Investigation Report," it is said "Defendant, Benny Guerrero, has no objections to the presentence investigation report. Defendant would object to paragraphs 31 and 38, but due to the enhancement provisions set out under paragraph number 50, the objections would not be material to the ultimate sentence of the Defendant." Paragraphs 31 and 38 related to the four-level offense level adjustment for each count under section 2K2.1(b)(5) of the Guidelines for possession of the firearms in connection with another felony, namely the second January 22, 1992, burglary. Paragraph 50 related to the application of Guidelines section 4B1.4(b)(3)(A). Nothing in this "commentary" document suggests on what basis defendant would object to either paragraph 31 or 38 if they were material.

At the sentencing hearing, no reference was made to paragraphs 31, 38, or 50 of the PSI or to the subject matter of any of them or to section 2K2.1(b)(5) or section 4B1.4(b)(3)(A), and defense counsel merely argued for a downward departure from the 210 to 262 month Guideline range stated in the PSI. At the beginning of the hearing the following transpired:

    "THE COURT:   . . .

appeal, we will only review the district court's actions for plain error. *United States v. Hoster*, 988 F.2d 1374, 1380 (5th Cir. 1993); *United States v. Navejar*, 963 F.2d 732, 734 (5th Cir. 1992); *United States v. Lopez*, 923 F.2d 47, 49 (5th Cir.) (per curiam), *cert. denied*, 111 S.Ct. 2032 (1991). "Plain error is error so obvious that [this Court's] failure to notice it would seriously affect the fairness, integrity, or public reputation of [the] judicial proceeding . . . ." *Hoster*, 988 F.2d at 1380 (internal quotations omitted). Given the limited scope of our review, we consider all evidence in the record supporting the enhancements and will uphold the sentence "if the record as a whole demonstrates that the adjustments did not result in a miscarriage of justice." *United States v. Pattan*, 931 F.2d 1035, 1043 (5th Cir. 1991), *cert. denied*, 112 S.Ct. 2308 (1992). We conclude that the district court

---

Mr. Guerrero, you appeared before the Court on May the 20th of this year and your guilty plea was accepted, you are here now for sentencing. Have you had an opportunity to review the Pre-Sentence Report in this case?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any comments or corrections to the report that you would like to make?

THE DEFENDANT: No, sir.

THE COURT: Mr. Brown [defense counsel], are there any matters that need to be ruled on this afternoon?

MR. BROWN: Your Honor, we had no objections.

THE COURT: All right. Then the Court will adopt the recommendation of the Probation Office that the Guideline range as to County One be 210 to 262 months and that the Guideline range for Count Two be 120 months."

5

did not plainly err in finding that Guerrero possessed the firearms in connection with a crime of violence.

Guerrero pleaded guilty to a violation of 18 U.S.C. § 922(g)(1), which prohibits any person who has been convicted of a crime punishable by imprisonment for a term exceeding one year to transport, possess, or receive any firearm that is in or affects interstate commerce.  A defendant convicted under section 922(g) who has three previous convictions for violent felonies is subject to sentence enhancement under 18 U.S.C. § 924(e),[5] and is deemed an "armed career criminal" under U.S.S.G § 4B1.4(a).  As an armed career criminal, Guerrero's offense level is increased to thirty-four if he "used or possessed the firearm . . . in connection with a crime of violence," or thirty-three otherwise.  U.S.S.G. § 4B1.4(b)(3).  Guerrero does not dispute that he committed a burglary of a habitation, or that burglary of a habitation is a crime of violence as defined by U.S.S.G. § 4B1.2(1)(ii).  He contends, however, that he did not possess the stolen firearms "in connection with" the burglary.

---

[5]     Section 924(e) provides:

"In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and . . . such person shall not be eligible for parole with respect to the sentence imposed under this subsection." 18 U.S.C. § 924(e)(1).

6

Guerrero argues that he could not have possessed the firearms in connection with the burglary because he remained outside the house as a lookout, and, therefore, his accomplice completed the burglary before he gained possession.[6] We reject this contention for two reasons. First, Beltran's version of the burglary was that Guerrero did not wait in the car but rather actively participated by prying open the back door and breaking into the gun cabinet. Questions of fact "capable of resolution by the district court upon proper objection at sentencing can never constitute plain error." *Lopez*, 923 F.2d at 50. Next, even if we assume Guerrero remained outside the residence, he could still be responsible for the criminal acts of his confederate. Specifically, the Guidelines hold a defendant accountable for "all acts . . . committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." Section 1B1.3(a)(1)(A).[7] Participation as a

---

[6] Guerrero asserts that the "burglary" instantaneously began and ended once Beltran "entered" the residence with the requisite intent. Texas law, however, defines burglary as either "enter[ing] a habitation or building . . . with intent to commit a felony or theft; . . . or enter[ing] a building or habitation and [thereafter] commit[ting] or attempt[ing] to commit a felony or theft." Tex. Penal Code § 30.02 (a)(1), (3) (Vernon 1992). Thus, the burglary itself may involve more than the initial entry. We note that "murder in the course of committing [a] burglary" is a capital offense in Texas. *Id*. § 19.03 (a)(2). The capital murder statute obviously does not require the defendant to commit the murder at the instant he enters the residence, but rather encompasses murder committed during the ensuing theft.

[7] Guerrero could also be held accountable for the possession

7

lookout and assistance in carrying the stolen firearms to the car facilitated the commission of the burglary and helped the burglars avoid detection. Thus, it would not be plain error to hold Guerrero accountable for the possession of the firearms by Beltran. *See United States v. Raborn*, 872 F.2d 589, 595-96 (5th Cir. 1989).

Section 4B1.4(b)(3)(A) does not define possession "in connection with" a crime of violence. The government submits that we should give the term "in connection with" a straightforward and literal interpretation, and should accordingly apply the enhancement because Guerrero did, in fact, physically possess firearms during the commission of a burglary. In the absence of any statutory definition, we construe this phrase according to its

---

of the firearms under section 1B1.3(a)(1)(B), which provides that "in the case of jointly undertaken criminal activity, [the defendant is accountable for] all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." The Guidelines provide the following example to illustrate the accountability of accomplices, such as lookouts:

> "Defendant C is the getaway driver in an armed bank robbery in which $15,000 is taken and a teller is assaulted and injured. Defendant C is accountable for the money taken under subsection (a)(1)(A) because he aided and abetted the act of taking the money (the taking of money was the specific objective of the offense he joined). Defendant C is accountable for the injury to the teller under subsection (a)(1)(B) because the assault on the teller was in furtherance of the jointly undertaken criminal activity (the robbery) and was reasonably foreseeable in connection with that criminal activity (given the nature of the offense)." U.S.S.G. §1B1.3, comment. (illustration (b)(1)).

In these circumstances, although further factual development might be relevant to Guerrero's responsibility for Beltran's firearms possession in connection with this burglary, that is a matter which the failure to raise the issue below precludes Guerrero from now taking advantage of. *See Lopez*, 923 F.2d at 50.

8

ordinary and natural meaning. *Smith v. United States*, 113 S.Ct. 2050, 2054 (1993); *Perrin v. United States*, 100 S.Ct. 311, 314 (1979). The Supreme Court reads terms such as "used or possessed" quite expansively in the context of firearms. For instance, in order to prove a criminal defendant "use[d] a firearm . . . 'during and in relation to any crime of violence or drug trafficking crime,'" for purposes of 18 U.S.C. § 924(c)(1), the government need not show the firearm was even "use[d] as a weapon." *Smith*, 113 S.Ct. at 2053-54. In *Smith*, the Court held that a defendant who traded a firearm for cocaine *used* the firearm in relation to a drug offense even though he did not "use it for its intended purpose."[8] *Id*. at 2054-55. The Court admitted that *using* a machine gun as a medium for exchange is not the expected manner of use but determined that section "924(c)(1)'s language sweeps broadly, punishing any 'us[e]' of a firearm, so long as the use is 'during and in relation to' a drug trafficking offense." *Id*. at 2054. As the Court explained:

> "It is one thing to say that the ordinary meaning of 'uses a firearm' *includes* using a firearm as a weapon, since that is the intended purpose of a firearm and the example of 'use' that most immediately comes to mind. But it is quite another to conclude that, as a result, the phrase also *excludes* any other use. Certainly that

---

[8]     The Supreme Court did not consider what activity was necessary to constitute "possessing" or "carrying" a firearm because the indictment only charged that Smith "knowingly used the [firearm] in relation to a drug trafficking crime." *Smith*, 113 S.Ct. at 2053. The indictment in the present case explicitly alleged *possession* of a firearm. Proving possession should ordinarily require a lesser showing than proving use. *Cf. United States v. Blankenship*, 923 F.2d 1110, 1114 (5th Cir.), *cert. denied*, 111 S.Ct. 2262 (1991) ("Possession of the gun does not constitute 'use' unless the gun formed a part of the narcotics crime.").

conclusion does not follow from the phrase 'uses . . . a firearm' itself." *Id.* at 2055.

When determining the ordinary meaning of section 4B1.4(b)(3)(A)'s phrase "possessed the firearm . . . in connection with a crime of violence," the example that most immediately comes to mind is possessing the firearm as an instrument of the crime. The reasoning in *Smith*, however, suggests that the phrase "in connection with" does not necessarily exclude possessing the firearms as fruits of the crime the possessor is contemporaneously committing. In light of *Smith*, the district court would hardly commit a miscarriage of justice by finding the firearms were possessed "in connection with" the burglary.

To assist our interpretation, we may also look by analogy to the Guidelines for enhancing drug offenses where "a dangerous weapon (including a firearm) was possessed." U.S.S.G § 2D1.1(b)(1). The commentary to this section states that sentence enhancement for weapon possession "should be applied if the weapon was present, unless it is *clearly improbable* that the weapon was connected with the offense."[9] Section 2D1.1(b), comment. (n.3) (emphasis added). Such a strict application of the enhancement for

---

[9]    As an example, the commentary states "the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." Section 2D1.1(b) comment. (n.3).
    The Tenth Circuit recently stated that the same policy principles underlying section 2D1.1(b)(1) would explain an increased sentence for possession of firearms by a felon under section 2K2.1(b)(5) (possession "in connection with another felony offense"). *United States v. Sanders*, 990 F.2d 582, 585 n.3 (10th Cir. 1993), *cert. denied*, 62 U.S.L.W. 3250 (U.S. Oct. 4, 1993). The Court, however, declined to extend the "clearly improbable" standard to section 2K2.1(b)(5) in the absence of explicit guidance from the Sentencing Commission. *Id.*

weapons possession "reflects the increased danger of violence when drug traffickers possess weapons." *Id.* In such cases, "[t]he government need not prove actual use or brandishing of the weapon, but may meet its burden by showing that the weapon facilitated, or could have facilitated, the drug trafficking offense." *United States v. Capote-Capote*, 946 F.2d 1100, 1104 (5th Cir. 1991), *cert. denied*, 112 S.Ct. 2278 (1992). This rationale is equally applicable to a crime of violence such as burglary of a habitation. Possession of firearms obviously increases the *danger of violence* whether or not such weapons are actually used. If armed burglars encounter the occupants of a home or law enforcement officials, it makes little difference how the burglars obtained their firearms.

We must also keep in mind that Guerrero's section 924(e) sentencing as an armed career criminal was based on his unlawful possession of firearms rather than his participation in the burglary by which they were obtained. Had Guerrero avoided any involvement in the burglary and simply received the stolen firearms several days later, he would still be subject to section 924(e) enhancement as an armed career criminal based on his violation of 18 U.S.C. § 922(g) and his three prior violent felony convictions. As an armed career criminal, he would receive a base offense level of at least thirty-three. *See* U.S.S.G. § 4B1.4(b)(3)(B). The one-point enhancement in section 4B1.4(b)(3)(A) for "possess[ing] the firearm . . . in connection with a crime of violence" merely reflects the context of the defendant's possession of the firearms. In this case, the context is clearly the commission of a burglary. Thus, the district court did not plainly err by applying this

enhancement to reflect the more culpable circumstances surrounding Guerrero's possession of the firearms.[10]

Finally, Guerrero's criminal history category would be VI whether or not he possessed the firearms in connection with the burglary.[11]  His total offense level would be reduced from thirty-two to thirty-one if section 4B1.4(b)(3)(A) were inapplicable.  A discrepancy of only one offense level out of more than thirty militates against a finding of plain error.  *See Lopez*, 923 F.2d at 51 (finding that a one-point reduction in criminal history score

---

[10]    The Sentencing Guidelines covering burglary of a residence, where such crime is punishable under federal law, include separate sentence enhancements where "a firearm . . . was taken," U.S.S.G. § 2B2.1(b)(3), and where "a dangerous weapon (including a firearm) was possessed."  Section 2B2.1(b)(4).  The commentary states that "[s]ubsection (b)(4) does not apply to possession of a dangerous weapon (including a firearm) that was stolen during the course of the offense."  Section 2B2.1, comment. (n.3).  This distinction is necessary to prevent an automatic double enhancement for stealing weapons and possessing the same stolen weapons.

In the present case, however, no enhancement was given for the stealing of firearms, so there is no risk of duplicate enhancement.  A closer call may have been presented had Guerrero not been subject to enhancement as an armed career criminal.  The guidelines for possession of a firearm by a felon provide separate enhancements where the defendant possessed a stolen firearm, § 2K2.1(b)(4), and where the defendant "possessed [a] firearm . . . in connection with another felony offense, [burglary of a habitation]."  Section 2K2.1(b)(5).  Arguably, as applied in the present context these provisions could enhance a defendant's sentence twice for essentially the same conduct. Given the limited scope of our review and the absence of similar language in the armed career criminal provision, we need not now address this matter.

[11]    Under section 4B1.4(c), the criminal history category for an armed career criminal is the greatest of: (1) the criminal history category from Chapter Four, Part A; (2) Category VI, if he "possessed the firearm . . . in connection with a crime of violence;" or (3) Category IV.  Guerrero's criminal history score under Chapter Four, Part A was fifteen, placing him in category VI regardless of whether he possessed any firearms in connection with another felony or violent crime.  *See supra*, note 2.

was not plain error); *cf., Hoster*, 988 F.2d at 1380-81 (stating that a six-point discrepancy would constitute plain error, while a two-point discrepancy likely would not).  A criminal history category of VI and an offense level of thirty-one yield a range of imprisonment of 188-235 months (and the PSI noted possible grounds for upward departure).  The sentence of 240 months imposed by the district court falls only slightlySQless than 3 percentSQbeyond this range.[12]

Plain error has not been established here.

### Conclusion

Guerrero's conviction and sentence are

AFFIRMED.

---

[12]    And is well within the statutory maximum of life imprisonment.  *See United States v. Miles*, 947 F.2d 1234, 1235 & n.1 (5th Cir. 1991); *United States v. Fields*, 923 F.2d 358, 362 (5th Cir. 1991), *overruled in other respect*, *United States v. Lambert*, 984 F.2d 658, 662 & n.10 (5th Cir. 1993) (en banc); *United States v. Carey*, 898 F.2d 642, 644 (8th Cir. 1990); *United States v. Blannon*, 836 F.2d 843, 845 (4th Cir.), *cert. denied*, 108 S.Ct. 1741 (1988).