REVISED DECEMBER 16, 1998
IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-10043

_____


UNITED STATES OF AMERICA,

                    Plaintiff-Appellee,


        v.

DANIEL VASQUEZ,

                    Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Texas
_____

November 30, 1998

Before KING, GARWOOD, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

     Defendant-appellant Daniel Vasquez appeals the sentence imposed after he pleaded guilty to participating in a drug conspiracy.  We affirm.

I.  FACTS AND PROCEDURAL BACKGROUND

     On July 22, 1997, Daniel Vasquez (Vasquez) was arrested at his home in St. Paul, Minnesota on drug conspiracy charges. The arresting officers searched Vasquez's home and found about eight pounds of marijuana and twenty empty Tupperware plastic

containers used to ship marijuana to Vasquez.  On the day of his arrest, officers also searched Vasquez's business, Daniel's Jewelers, and found two firearms, a loaded Smith & Wesson .40 caliber semiautomatic handgun and a loaded Smith & Wesson .38 caliber handgun.

Pursuant to a plea agreement, Vasquez pleaded guilty to conspiracy to possess with intent to distribute 1000 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vii).  In computing Vasquez's sentence, the district judge calculated a base offense level of 26, added two levels pursuant to United States Sentencing Guidelines (U.S.S.G.) § 2D1.1(b)(1) based on Vasquez's possession of the two guns found at his store, and subtracted three levels pursuant to U.S.S.G. § 3E1.1(a), (b)(1), and (b)(2) because Vasquez accepted responsibility for his offense.

The district court found that Vasquez possessed a firearm in connection with the drug offense, and held that U.S.S.G. § 5C1.2, the safety valve provision, was therefore not applicable.  The district judge based his conclusion that Vasquez possessed a weapon in connection with the drug offense on his findings that Vasquez's drug customers brought money from drug proceeds to Vasquez at his store, that Vasquez used his business to store and subsequently to ship boxes of drug money to one of his codefendants in Texas, and that Vasquez used his store as a place to receive marijuana.  The district court ultimately sentenced

2

Vasquez to the mandatory minimum sentence of sixty months of imprisonment and four years of supervised release in accordance with 21 U.S.C. § 841(b)(1)(B).  But for the application of the mandatory minimum sentence, the applicable sentencing range would have been fifty-seven to seventy-one months.

Vasquez timely appealed, arguing that the district court erred in refusing to apply § 5C1.2 at his sentencing.

## II.  DISCUSSION

A sentencing court's factual findings pertaining to a § 5C1.2 reduction are reviewed for clear error.  See United States v. Wilson, 105 F.3d 219, 222 (5th Cir.), cert. denied, 118 S. Ct. 133 (1997); United States v. Flanagan, 80 F.3d 143, 145 (5th Cir. 1996).  This court reviews the district court's legal interpretation of § 5C1.2 de novo.  See Wilson, 105 F.3d at 222; Flanagan, 80 F.3d at 145.

Vasquez argues that he should have been sentenced under the "safety valve" provision of 18 U.S.C. § 3553(f), set forth at § 5C1.2 of the sentencing guidelines.  Pursuant to § 5C1.2, a defendant "shall" be sentenced in accordance with the applicable guidelines range, without regard to any statutory minimum sentence, if the court finds, among other things, that "the defendant did not . . . possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense."  U.S.S.G. § 5C1.2(2).  The district court relied solely on § 5C1.2(2) in ruling that the safety valve did

not apply.  Vasquez maintains that the guns found at his business were not connected to the offense, and that the district court therefore erred in failing to apply the safety valve.

We have previously construed the "in connection with the offense" language in § 5C1.2(2) in tandem with the language in § 2D1.1(b)(1), which increases the level of certain offenses if "a dangerous weapon (including a firearm) was possessed."  For example, in United States v. Flucas, 99 F.3d 177, 178-79 (5th Cir. 1996), cert. denied, 117 S. Ct. 1097 (1997), we upheld a district judge's finding that § 2D1.1(b)(1) applied because, relying on Application Note 3 to § 2D1.1, we found a sufficient connection between a gun found under the defendant's car seat and cocaine found in the car.  We observed that the district court's finding that the defendant "possessed" a firearm for § 2D1.1(b)(1) purposes was "also significant because it disqualified [the defendant] from being eligible for the 'safety valve' provision of U.S.S.G. § 5C1.2."  Id.

Similarly, in United States v. Myers, 150 F.3d 459, 465 (5th Cir. 1998), the defendant argued that the district court's application of the two-level enhancement under § 2D1.1(b)(1) and his failure to apply the safety valve in § 5C1.2 were erroneous because he had no knowledge of a gun found under a bed in an apartment where transactions related to a drug conspiracy took place.  In discussing the § 2D1.1(b)(1) issue, we stated that the district judge implicitly found that the defendant "knew about,

4

and possessed, the rifle in the course of the conspiracy."  Id.
This finding led us to "affirm the two-level firearm enhancement
and necessarily affirm the district court's finding that [the
defendant] was not eligible for the 'safety valve' provision of
U.S.S.G. § 5C1.2(2)."  Id. (emphasis added).

   Flucas and Myers, therefore, suggest that the analysis
whether a sufficient nexus exists between a possessed firearm and
the offense is the same under both § 5C1.2(2) and § 2D1.1(b)(1).[1]
Other circuits have similarly analyzed the "in connection with
the offense" requirement in § 5C1.2(2) consistently with the
§ 2D1.1(b)(1) "possession" requirement for this purpose.  See,
e.g., United States v. Tate, 153 F.3d 724, No. 97-4871, 1998 WL
436320, at *2-*3 (4th Cir. July 20, 1998) (unpublished opinion);
United States v. Coleman, 148 F.3d 897, 903-04 (8th Cir.), cert.
denied, 119 S. Ct. 228 (1998) (stating that identical standards
govern both the § 2D1.1 "possession" requirement and § 5C1.2 "in
connection with the offense" requirement for purpose of
determining whether there is sufficient nexus between defendant's
firearm and offense); United States v. Tyler, 125 F.3d 1119, 1120
(7th Cir. 1997) (stating that district court's determination that

---

[1] Neither Flucas nor Myers raised the issue of whether
§ 5C1.2 and § 2D1.1 should be interpreted differently for all
purposes, including whether another's actions can be attributed
to the defendant.  Cf. Wilson, 105 F.3d at 222 (determining that
defendant was eligible for sentencing under the safety valve
despite possession of a firearm by a co-conspirator).  That issue
is similarly not at issue in this case, and we therefore decline
to address it.

5

defendant's ownership of firearm satisfied the § 2D1.1(b)(1) standard "not only enhanced her offense level [under § 2D1.1(b)(1)] but rendered her ineligible for sentencing relief pursuant to the 'safety valve' provisions of 18 U.S.C. § 3553(f) and section 5C1.2 of the Sentencing Guidelines"); United States v. Hallum, 103 F.3d 87, 89-90 (10th Cir. 1996), cert. denied, 117 S. Ct. 1710 (1997) and cert. denied, 117 S. Ct. 1710 (1997) (interpreting § 5C1.2 and § 2D1.1(b)(1) consistently in affirming district court's decision not to apply § 5C1.2).

Section 5C1.2(2) and § 2D1.1(b)(1) can be interpreted similarly for this purpose despite the obvious differences in their language. On two other occasions, we have equated guidelines requiring that a firearm be "in connection with the offense" with the § 2D1.1(b)(1) "possession" language. See United States v. Condren, 18 F.3d 1190, 1196-97 (5th Cir. 1994) (interpreting § 2K2.1(b)(5), which requires a sentencing adjustment if a firearm was possessed "in connection with another felony offense," with reference to § 2D1.1(b)(1)); United States v. Guerrero, 5 F.3d 868, 872-73 (5th Cir. 1993) (analogizing § 4B1.4(b)(3)(A), which increases the offense level if a defendant "used or possessed the firearm . . . in connection with a crime of violence," with § 2D1.1(b)(1)). We reached these results despite our observation that because application of § 2D1.1(b)(1) turns on the "possession" of a firearm, and does not specifically mention a "connection to the offense,"

6

§ 2D1.1(b)(1) "[a]rguably . . . requires less of a relationship, or specific connection, between the possession of the weapon, and the drug offense."  Condren, 18 F.3d at 1197.  We reasoned in Condren and Guerrero that because the policies behind § 2K2.1(b)(5) and § 4B1.4(b)(3)(A) were similar to those underlying § 2D1.1(b)(1), the provisions should be analyzed using the same standard.  See id. (stating that "similar policy reasons militate in favor of the enhancement provided by both § 2D1.1(b) and § 2K2.1(b)(5)"); Guerrero, 5 F.3d at 872-73 (justifying the application of the § 2D1.1 "possession" standard in a § 4B1.4(b)(3)(A) context because of the similarity of the underlying rationales of the two sections).  A comparison of the policies underlying § 5C1.2(2) and § 2D1.1(b)(1) similarly justifies our result in this case.  Section 5C1.2(2) denies safety valve treatment to offenders who possess a firearm in connection with the offense; § 2D1.1(b)(1) is similarly motivated in part by a concern that "[w]hen a firearm is carried during a drug offense . . . the drug felon has the ability to use the weapon in connection with his drug offense."  United States v. Regans, 125 F.3d 685, 686 (8th Cir. 1997), cert. denied, 118 S. Ct. 1398 (1998) (citing Condren, analyzing § 2K2.1(b)(5) with reference to § 2D1.1(b)(1) in determining whether there was a sufficient nexus between a possessed firearm and the offense).  We therefore are confident that despite any difference in semantics between § 2D1.1(b)(1) and § 5C1.2(2), the two

7

provisions should be analyzed analogously.

Vasquez does not appeal the district court's finding that Vasquez "possessed" a firearm for § 2D1.1(b)(1) purposes. Section 2D1.1(b)(1) applies "'if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.'" United States v. Eastland, 989 F.2d 760, 770 (5th Cir. 1993) (quoting U.S. Sentencing Guidelines Manual § 2D1.1 application note 3). The government has the burden of proof under § 2D1.1 of showing by a preponderance of the evidence "that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." Id. (internal quotation marks omitted); see United States v. Caicedo, 103 F.3d 410, 412 (5th Cir. 1997). Applying this standard, "the government must provide evidence that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred." Eastland, 989 F.2d at 770 (internal quotation marks omitted); see Caicedo, 103 F.3d at 412.

In contrast to § 2D1.1, the defendant has the burden of proving that he qualifies for sentencing under § 5C1.2. See Flanagan, 80 F.3d at 146; United States v. Ortiz, 136 F.3d 882, 883 (2d Cir. 1997), cert. denied, 118 S. Ct. 1104 (1998); United States v. Ajugwo, 82 F.3d 925, 929 (9th Cir. 1996), cert. denied, 117 S. Ct. 742 (1997). Vasquez thus had to show, by a preponderance of the evidence, that he did not possess a firearm

8

in connection with the drug conspiracy in order to qualify under the safety valve. Vasquez clearly failed to meet this burden of proof.

The district court found that Vasquez used his business to store drugs and the money proceeds from drug sales, and that Vasquez sent these money proceeds from his business to his suppliers in Texas, using his business as a return address on the packages. In addition, the district court found that it was "clearly probable that Vasquez possessed the firearms to protect the money derived through the drug trafficking conspiracy." The court relied on these findings, amply supported by the record, in finding that § 5C1.2 did not apply. The district court did not clearly err in this finding; these facts indicate that some of the drug conspiracy transactions occurred at the jewelry store and therefore that the guns found at the jewelry store were connected to the drug conspiracy. See Flucas, 99 F.3d at 179; United States v. Mitchell, 31 F.3d 271, 278 (5th Cir. 1994); Eastland, 989 F.2d at 769-70.

Vasquez's argument that there was an insufficient connection between the guns and the conspiracy because three months passed between the time the government could prove Vasquez sent drug money from the business and the time his business was searched is unavailing. Vasquez produced absolutely no evidence disproving a link between the guns found at his business and the drug conspiracy. He did not provide an alternative explanation for

why the guns were at the store--indeed, during the district court proceedings, his attorney told the district judge that the gun was "just there."  In addition, in the context of a drug conspiracy in which the defendant did not actively withdraw before his arrest, we have stated that a significant time lapse between specific evidence of a location's use in the conspiracy and the search of the location did not preclude a finding that a gun found at that location was connected to the conspiracy.  See Caicedo, 103 F.3d at 412.  Thus, Vasquez failed in his burden to prove the lack of a connection between the guns found at his jewelry store and the drug conspiracy, and the district court therefore did not clearly err in declining to apply § 5C1.2.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.