**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Steven George NELSON, Defendant–
Appellant.**

**No. 99–10127.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 1999

Filed Aug. 16, 2000

Franny A. Forsman, Federal Public Defender, and Paul G. Turner, Assistant Federal Public Defender, Las Vegas, NV, for appellant.

Kathryn Landreth, United States Attorney, Joseph Sullivan, Assistant United States Attorney, and Pamela A. Greiman, Assistant United States Attorney, Las Vegas, NV, for appellee.

Before: BRIGHT,* PREGERSON, and FLETCHER, Circuit Judges.

BRIGHT, Circuit Judge:

Steven George Nelson ("Nelson") pleaded guilty to one count of possession of marijuana with intent to manufacture. At sentencing, the district court enhanced Nelson's sentence under U.S.S.G. § 2D1.1(b)(1), for possession of a dangerous weapon and, after so doing, concluded that U.S.S.G. § 5C1.2—the so-called "safety valve" provision—was inapplicable because it was not "clearly improbable" that guns seized from Nelson were connected with his crimes.

Nelson appeals his sentence and argues two points. First, Nelson contends that when the government opposed application of the safety valve, it breached the terms of his plea agreement. As a result, Nelson argues that he is entitled to resentencing in the absence of government opposition. Second, Nelson argues that he was illegally denied relief under the safety valve

* The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

because the district court required him to demonstrate eligibility for relief by clear and convincing evidence, rather than by the ordinary preponderance of the evidence standard.

For the reasons which follow, we RE-VERSE and REMAND for resentencing.

## I. BACKGROUND

On June 16, 1998, after receiving information from a confidential informant, agents of the DEA arrested Nelson at his home in Las Vegas, Nevada. In Nelson's home—which he shared with his girlfriend, Diana Thomas ("Thomas"), and her two grown sons—the agents discovered 160 marijuana plants growing in a bedroom. Loose marijuana, sales records, and drug paraphernalia were found throughout the house.

The agents also discovered five unloaded guns in various parts of the house. These weapons included: one 9mm handgun found in Thomas's bedroom; one 30–06 hunting rifle found in a bedroom closet; and three handguns found in the den, along with a canister containing a variety of ammunition. No guns or ammunition were found in the bedroom which housed Nelson's marijuana plants.

In due course, Nelson was indicted on two counts: one count for conspiracy to possess a controlled substance, with intent to manufacture, in violation of 21 U.S.C. §§ 846 and 841(a)(1); and one count for possession of a controlled substance, with intent to manufacture, in violation of 21 U.S.C. § 841(a)(1). Although Nelson originally pleaded not guilty, he subsequently entered a plea agreement with the government. Under this agreement, dated October 22, 1998, Nelson agreed to plead guilty to the possession charge. Although he waived his general right to appeal his conviction and sentence, Nelson explicitly retained the right to appeal a sentence exceeding the guideline range or one based

on the "erroneous denial of § 5C1.2 reduction."

Nelson's plea agreement noted the government's belief that Nelson "may be eligible for 5C1.2 reduction," and that "[i]f [he] is found to be 5C1.2 eligible a further reduction of two levels would result...." At the same time, however, the agreement also cautioned that the calculation of Nelson's sentence—which presumed § 5C1.2 reduction—was "based on information currently available and could change."

Pursuant to this agreement, a change of plea hearing was held on October 27, 1998. There, after the district court took Nelson's plea, the court asked the government to recite the representations made to Nelson in order to secure it. The government responded that,

> if the defendant pleads guilty to Count Two, he agrees to waive his right to appeal the conviction and sentence, except for the fact, unless the defendant is found to not be 5C1.2 eligible. We have a good faith belief that he is in fact, 5C1.2 eligible. If he pleads guilty we'll recommend that the defendant receive a three base offense level reduction for acceptance of responsibility. We agree to stipulate to the low end of the guidelines.

The court then accepted Nelson's plea and the Probation Office prepared a presentence investigative report ("PSR").

Although the parties had not addressed the issue previously, when the PSR was complete, it recommended that Nelson's sentence include a two-level enhancement under U.S.S.G. § 2D1.1(b)(1), ostensibly because he possessed a dangerous weapon during his crime.[1] The PSR based this recommendation on the recovery of guns and ammunition from Nelson's home. The PSR went on to conclude that, because

---

1. Section 2D1.1(B)(1) States That "[I]F A Dangerous Weapon (Including A Firearm) Was Possessed, Increase By 2 Levels." U.S.

SENTENCING GUIDELINES MANUAL § 2D1.1(b)(1) (1998).

§ 2D1.1(b)(1) was applicable, *a fortiori* Nelson was ineligible for § 5C1.2 relief.[2]

Before it was submitted to the court, Nelson challenged the PSR's recommendation and argued that the guns found in his home were not connected to his crime. Nelson noted that: the rifle was recently purchased as a gift for his brother; one of the four handguns—the 9mm found in Thomas's bedroom—did not belong to him; and, although Nelson admitted that he owned the other three handguns, he argued that they were mere "collectors' pieces" unrelated to his drug transactions. Additionally, by way of explanation, Nelson pointed out that he was a longtime hunter and, based on his rural upbringing, gun ownership was a way of life for him. He also noted that neither the guns nor the ammunition were found in the room which contained his marijuana plants.

Despite these explanations, the Probation Office was not moved to change the PSR's recommendations, and the recommendations were submitted to the district court at a sentencing hearing conducted on February 4, 1999.

Nelson renewed his arguments before the district court. The court found that given the number of guns recovered and the volume of ammunition seized, as well as the common nature of the weapons themselves, Nelson's claims were not credible. As a result, the court found that a two-point sentencing enhancement under U.S.S.G. § 2D1.1(b)(1) was warranted, saying, "I would be hard pressed to find that it's clearly improbable that the weapons were not possessed in connection with the marijuana grow."

Then, turning to the safety valve, the court analyzed the requirements of § 5C1.2. Although the court was satisfied that Nelson met four of the five requirements for relief, the government offered the testimony of its case agent in opposi-tion to the final requirement, namely § 5C1.2(2). After hearing this testimony, and further argument from both sides, the district court found that Nelson was ineligible for § 5C1.2 relief, stating, "I have a serious problem finding clearly—that it's clearly improbable that the weapons were not possessed in connection with the marijuana grow, and so I will not look to the safety valve."

As a result, the district court sentenced Nelson to the sixty-month statutory minimum term of imprisonment, and this timely appeal follows.

## II. DISCUSSION

Nelson challenges the district court's refusal to grant safety valve relief in two ways. First, Nelson contends that the government's representations—both written and oral—that it expected Nelson to be eligible for the safety valve obligated the government not to oppose Nelson's eligibility therefor. Because the government actively opposed application of the safety valve, Nelson argues that the government breached his plea agreement and, on that basis, he seeks remand and subsequent resentencing in the absence of government opposition. Second, Nelson argues that he demonstrated by a preponderance of the evidence that his possession of firearms was not connected with his offense. Nelson suggests that the district court erred because it denied him relief to which he was otherwise entitled after applying a different, ostensibly more stringent, standard of proof.

### A. Breach of the Plea Agreement.

 Nelson's first argument is that the government violated his plea agreement when it actively opposed his eligibility for the safety valve. Such claims are reviewed *de novo*. *See United States v.*

---

**2.** Section 5C1.2(2) Makes a defendant ineligible for relief from the statutory minimum sentence if, *inter alia,* he "possess[ed] a firearm or other dangerous weapon (or induce[d] another participant to do so) in connection with the offense." U.S. SENTENCING GUIDELINES MANUAL § 5C1.2(2) (1998).

*Diamond,* 53 F.3d 249, 252 (9th Cir.1995). Plea agreements are, of course, "contractual in nature," *United States v. Ajugwo,* 82 F.3d 925, 928 (9th Cir.1996) (internal quotation marks and citation omitted), and in this case, Nelson argues that the government was, by virtue of its prior representations, contractually obligated not to oppose safety valve relief. We agree.

The statements at issue in this regard were made by the government both in writing (twice in the plea agreement) and orally (at Nelson's change of plea hearing). In the written agreement, the government noted that Nelson "may be eligible for 5C1.2 reduction," and it promised that "[if he were] found to be 5C1.2 eligible a further reduction of two levels would result...." In addition, when asked by the court at Nelson's change of plea hearing to detail the inducements made to Nelson to secure his plea, the government stated, *inter alia,* that it had "a good faith belief that [Nelson] is in fact, 5C1.2 eligible." We believe that these statements were sufficient, at a minimum, to create a commitment not to oppose Nelson's request for application of the safety valve.

Although it is true, as the government points out, that its "good faith belief" was "based on information currently available," language which attempts to equivocate and condition the government's representations, those representations were nevertheless strong enough to encourage Nelson to believe that the safety valve would apply in his case. In addition, no facts were developed after the time of Nelson's plea which could have altered the government's calculus and undercut its duty to perform under the agreement. At the time the government made its statements, it was possessed of all relevant facts, including the recovery of guns and ammunition, none of which were in the immediate vicinity of the marijuana plants. Under these circumstances, we believe that the government's representations created an obligation on its part not to oppose application of § 5C1.2.

As a result, because the government did in fact oppose application of § 5C1.2, it breached the plea agreement. Nelson is therefore entitled to resentencing.

**B. Application of the Safety Valve.**

■ Nelson also argues that the district court erroneously denied him relief under U.S.S.G. § 5C1.2 because the court apparently used the same burden of proof in that context that it had used when considering whether to enhance Nelson's sentence under § 2D1.1(b)(1). This fact, according to Nelson, illegally forced him to prove his eligibility for the safety valve by more than a preponderance of the evidence. We agree.

■ When we review a district court's interpretation of the sentencing guidelines, our review is *de novo.* *See United States v. Smith,* 175 F.3d 1147, 1148 (9th Cir. 1999).

Nelson contends that, under the law of this circuit, a defendant must prove his eligibility for the safety valve under a preponderance of the evidence standard. That being the case, Nelson argues that the district court's statements at sentencing—particularly the court's observation that it was "clearly improbable that the weapons were not possessed in connection with the marijuana grow"—indicate that the court effectively required him to demonstrate his eligibility with a heightened quantum of proof.

In this circuit, once the government demonstrates that a defendant possessed a dangerous weapon, to avoid a sentence enhancement under § 2D1.1(b)(1), the burden of proof is on the defendant to prove that it is "clearly improbable" that he possessed a weapon in connection with the offense. *See United States v. Restrepo,* 884 F.2d 1294, 1296 (9th Cir.1989); U.S.S.G. § 2D1.1(b)(1), comment. (n.3) ("The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.").

In contrast, although the burden of proof for the safety valve under § 5C1.2 also remains on the defendant, to qualify for relief the defendant must only prove by a "preponderance of the evidence" that a weapon was not used in connection with the offense. *See United States v. Lipman,* 133 F.3d 726, 730 (9th Cir.1998); *United States v. Washman,* 128 F.3d 1305 (9th Cir.1997); *Ajugwo,* 82 F.3d at 929.

This system of differing standards of proof became more complicated, however, by the fact that, after Nelson's sentencing hearing was complete, this court decided *United States v. Smith,* 175 F.3d 1147 (9th Cir.1999), wherein we stated, simply, that "conduct which warrants an increase in sentence under § 2D1.1(b)(1) necessarily defeats application of the safety valve." *Id.* at 1149. There, as here, the district court imposed a § 2D1.1(b)(1) enhancement after finding that "it was not 'clearly improbable that the weapon was connected with the offense.'" *Id.* On that basis, we concluded that Smith was simply ineligible for safety valve relief under § 5C1.2. As a result, *Smith might* be read as a per se rule which forecloses the safety valve any time a § 2D1.1(b)(1) enhancement has been imposed—irrespective of the independent standard of proof that might otherwise be applicable to questions of safety valve eligibility.

To the extent that *Smith* might be applied in this case to support the actions taken by the district court, Nelson urges us to find that *Smith* is in conflict with the otherwise prevailing laws of the circuit. On this point however, we disagree and hold that separate and distinct burdens of proof for § 2D1.1(b)(1) and § 5C1.2 are not inconsistent with our opinion in *Smith.* To understand why we are compelled to reach this conclusion, it is important to closely examine the language used in *Smith* and the cases upon which it relied.

To begin with, we recognize that two separate questions are implicit in the application of both § 2D1.1(b) and § 5C1.2. First, what is the *conduct* that is "in con-

nection with"? Second, what is the *burden of proof* by which this conduct must be proven? Our opinion in *Smith* clearly focused on the *conduct* issue, not on the *burden of proof* issue, *see Smith,* 175 F.3d at 1149 ("every circuit to consider the issue has held that *conduct* which warrants increase in sentence under § 2D1.1(b)(1) necessarily defeats application of the safety valve" (emphasis added)). To support its conclusion with respect to conduct, *Smith* cited three cases from our sister circuits (*United States v. Vasquez,* 161 F.3d 909 (5th Cir.1998); *United States v. Hallum,* 103 F.3d 87 (10th Cir.1996); and *United States v. Burke,* 91 F.3d 1052 (8th Cir.1996)). After so doing, the court stated explicitly that, "We now align ourselves with these circuits." *Smith,* 175 F.3d at 1149.

With the *Smith* court's attention focused squarely on a defendant's conduct, its statement-that conduct which supports a § 2D1.1(b)(1) enhancement is the same as conduct which will defeat a defendant's request for safety valve relief—is entirely sensible, and each of the three cases cited by the *Smith* court do support that idea. Because the *Smith* court was so clearly focused on questions of *conduct,* we conclude that the only thing the *Smith* court did was align itself with the holdings in these cases as to *conduct.* The *Smith* court did not focus on, and did not analyze, the issues of which party has the burden of proof and by what quantum that party must establish whether the alleged conduct did, or did not, occur. As a result, we must consider what the cases relied on by *Smith* (*Vasquez, Hallum,* and *Burke*) say about these important burden of proof issues.

For its part, *Vasquez* clearly indicates that the burden of proof is different for enhancement and safety valve purposes: It first states, "Section 2D1.1(b)(1) applies 'if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense' ... The government has the burden of proof under

§ 2D1.1 ... by a preponderance of the evidence...." 161 F.3d at 912. The *Vasquez* court then goes on to note that, "[i]n contrast to § 2D1.1, the defendant has the burden of proof of proving that he qualifies for sentencing under § 5C1.2.... Vasquez thus had to show, by a preponderance of the evidence, that he did not possess a firearm in connection with the drug conspiracy...." *Id.* at 912. Thus, the *Vasquez* court clearly says two things: (1) the burdens of proof for sentencing enhancement under § 2D1.1 and the § 5C1.2 safety valve are, on different parties, and (2) the defendant's burden of proof for safety valve is "preponderance of the evidence."[3]

*Hallum*, 103 F.3d 87, has little to say on the burden of proof issues raised here. In *Hallum*, the defendant argued that the burden of proof for the safety valve was on the United States, but the court rejected this argument. *See id.* at 89 (stating that the burden of proof is on the defendant). The *Hallum* court says nothing, however, about the quantum of proof by which that burden is met.

Finally, in *Burke*, 91 F.3d 1052, the court talks only about equivalency of conduct. It says nothing whatsoever about the burden or quantum of proof required by either §§ 2D1.1 or 5C1.2.

Thus, we conclude that the cases upon which *Smith* relies, to the extent that they speak to burden of proof issues, indicate that, although conduct which will support a finding under these two sections may be the same, the burden and quantum of proof under §§ 2D1.1 and 5C1.2 remain different. For purposes of § 5C1.2, therefore, we hold that, even where a defendant has already received a § 2D1.1 enhancement, the defendant need only show his eligibility for relief by a preponderance of the evidence.

In this case, the sentencing transcript shows that the district court used parallel language when considering both the § 2D1.1(b)(1) enhancement and § 5C1.2(2) eligibility, suggesting that the court applied a single standard of proof. With respect to the former, the district court stated that it "would be hard pressed to find that it's clearly improbable that the weapons were not possessed in connection with the marijuana grow." With respect to the latter, the court said that it would not "look to the safety valve" because "it's clearly improbable that the weapons were not possessed in connection with" Nelson's marijuana operation. Given this fact, it appears to us that the district court required Nelson to prove his eligibility for safety valve relief by something more than a preponderance of the evidence. This was error.

On remand, under the preponderance of the evidence standard, the district court will need to consider the issue of possession as to some of the weapons and, as to those weapons possessed by Nelson—which may come within the enhancement guideline—whether the weapons in question were connected with the offense. If Nelson establishes by a preponderance of the evidence that the weapons found in his house were not connected with the offense, he will be eligible for the safety valve under § 5C1.2 of the sentencing guidelines.

## III. CONCLUSION

We conclude that the government breached its plea agreement with Nelson when it actively opposed his eligibility for the safety valve. We also conclude that the district court erred by requiring Nelson to prove that eligibility by more than a mere preponderance of the evidence. We

---

**3.** As we discuss above however, in the Ninth Circuit, the burden of proof under § 2D1.1(b)(1)—the enhancement guideline—is bifurcated, with the initial burden on the government to show some form of possession, after which the *defendant* has the burden to show that it is clearly improbable that the

possession was connected to the offense. *See United States v. Restrepo*, 884 F.2d 1294, 1296 (9th Cir.1989) (emphasis added). To that extent, the Fifth Circuit's first statement in *Vasquez* is inapplicable to the remainder of our analysis.

therefore REMAND this case for resentencing.

Should the district court find by a preponderance of the evidence that the guns found in Nelson's house were not possessed in connection with his marijuana operation, the court may apply the safety valve and reduce Nelson's sentence. The sentencing judge should appropriately consider that the government, pursuant to Nelson's plea agreement and its prior representations to the court, does not oppose a sentence below the guideline.

**REVERSED AND REMANDED.**