UNITED STATES of America, Plaintiff–Appellee,

v.

Steven TRAPP, Defendant–Appellant.

No. 00–10231.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 2001

Filed July 23, 2001

1054

Daniel J. Albregts, Daniel J. Albregts, Ltd., Las Vegas, Nevada, for the defendant-appellant.

J. Gregory Damm, Assistant United States Attorney, and Bruce Bettigole, Special Assistant, United States Attorney, Las Vegas, Nevada, for the plaintiff-appellee.

Before: SCHROEDER, Chief Judge, WALLACE, and TALLMAN, Circuit Judges.

WALLACE, Circuit Judge:

Trapp appeals from the sentence imposed following his guilty plea pursuant to a plea agreement. The issues before us are whether the government breached the plea agreement and if so, whether the sentence should be vacated. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely filed appeal pursuant to 28 U.S.C. § 1291, and we affirm.

I

On July 17, 1997, Trapp pleaded guilty to conspiracy to commit securities fraud in violation of 18 U.S.C. § 371. Under the plea agreement, the government agreed to "recommend that [Trapp] be permitted to serve his sentence in home detention, as permitted under § 5B1.1(a)(2)" of the Sentencing Guidelines. Section 5B1.1(a)(2) states that a sentence of probation is authorized if the applicable guideline range is in Zone B of the Sentencing Table. U.S.S.G. § 5B1.1(a)(2). Where the applicable guideline range is in Zone C or D of the Sentencing Table, the guidelines do not authorize a sentence of probation. U.S.S.G. § 5B1.1 app. n. 2.

The government entered the plea agreement with Trapp before the United States Probation Office (Probation Office) prepared its Presentence Report (Report). The agreement was predicated upon the parties' assumption that Trapp's adjusted offense level would be 10 and his criminal history would be Category I, giving him a guideline range of 6–12 months and placing him in Zone B of the Sentencing Table. U.S.S.G. ch. 5 pt. A. But the parties recognized that this could change and acknowledged the agreement's contingent

nature by agreeing that it was "based upon information concerning ... this defendant as it is *now known,* and *could change* based upon investigation by the United States Probation Office." (Emphasis added). Further, Trapp agreed that he "would not have the right to withdraw his plea of guilty" in the event that the Probation Office considered "factors unknown or unforeseen by the parties ... in determining the ... Guideline range."

Later, when the Report was complete, it was determined that Trapp's adjusted offense level was 9 and his criminal history was Category III. These calculations gave Trapp a guideline range of 8–14 months, placing him in Zone C of the Sentencing Table. U.S.S.G. ch. 5 pt. A. The report concluded that *a fortiori* Trapp was ineligible for home detention under section 5B1.1(a)(2), and it recommended a split sentence of four months in custody and four months in home detention.

At sentencing on March 3, 2000, the government concurred with the Report's recommendation, which was the lowest possible sentence authorized by the guidelines. The government did not recommend home detention pursuant to section 5B1.1(a)(2). Trapp's counsel requested a one-level downward departure, which would have placed Trapp in Zone B, thereby permitting a sentence of home detention pursuant to section 5B1.1(a)(2). Trapp's counsel argued that the plea agreement "indicated that the government had no objection to [Trapp] serving his sentence on [sic] home confinement" and that "had he been eligible but for the criminal history category, they wouldn't have been seeking, based simply upon his involvement in the facts of this case, a prison sentence." However, he acknowledged that "of course, [the government's recommendation of home detention] was predicated upon [Trapp] being eligible for that ... and there's no binding nature to

that recommendation, and therefore the government is certainly within their right to agree with the recommendation of the presentence investigation report."

The government opposed Trapp's request for a downward departure, arguing that it was not warranted because (1) "the original plea agreement ... was quite generous to [Trapp]," and (2) it was "very troubled" by pending charges against him in Kansas. The government stated that "on balance we think that the recommendation is an appropriate one given the whole picture." The district court denied Trapp's motion for a downward departure and sentenced him to four months in custody and four months in home confinement, followed by a two-year term of supervised release.

Later that same day, Trapp filed a Motion for Withdrawal of Plea or, in the Alternative, Motion for Resentencing, arguing for the first time that the government breached the plea agreement by not recommending home confinement at sentencing. In support of his motion, Trapp argued that the government was obliged to recommend a term of home detention regardless of whether it was authorized under the Guidelines. The government responded that it gladly would have made the recommendation, and refrained only because Trapp's unanticipated criminal history category rendered him ineligible for home detention under section 5B1.1(a)(2). It argued that it was not obligated under the agreement to recommend a sentence both parties agreed was unauthorized by the guidelines. The district court denied Trapp's motion on the basis that the government did not breach the plea agreement.

## II

On appeal, Trapp contends that the district court erred in denying his Motion for

Withdrawal or, in the Alternative, Motion for Resentencing. He argues that the government breached the plea agreement by affirmatively recommending a term of imprisonment when it was bound by the agreement to present a united front to the district court in support of a term of home detention. As a result, he contends that he is entitled to specific performance of the plea agreement.

The government replies that the agreement to recommend home detention was conditioned upon Trapp's eligibility under section 5B1.1(a)(2). Because Trapp's criminal history category ultimately located him in Zone C of the Sentencing Table, rendering him ineligible to be sentenced under section 5B1.1(a)(2), the government contends that its obligation to recommend home detention was obviated.

Our standards for reviewing a claim that the government has breached a plea agreement have been inconsistent. *See United States v. Mondragon*, 228 F.3d 978, 980 (9th Cir.2000) (comparing *United States v. Schuman*, 127 F.3d 815, 817 (9th Cir. 1997)—de novo standard—with *United States v. Salemo*, 81 F.3d 1453, 1460 (9th Cir.1996)—clearly erroneous standard); *United States v. Johnson*, 187 F.3d 1129, 1134 (9th Cir.1999) (same). We cannot as a panel, nor need we determine which standard governs because we conclude that under either standard the outcome is the same: the government did not breach the plea agreement.

### A.

"Plea agreements are contractual in nature and are measured by contract law standards." *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir.1993) (internal quotation marks omitted). Therefore, "[i]f the terms of the plea agreement on their face have a clear and unambiguous meaning, then this court will not look to extrinsic evidence to determine

their meaning." *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir.2000). In this case, the language of the agreement is perfectly clear.

The government agreed to "recommend that [Trapp] be permitted to serve his sentence in home detention, *as permitted under § 5B1.1(a)(2)*." (Emphasis added). That is, the government only agreed to recommend home detention pursuant to a specific guideline provision—section 5B1.1(a)(2)—that contains a strict eligibility requirement that a defendant's guideline range be in Zone B of the Sentencing Table. U.S.S.G. § 5B1.1(a)(2). Thus, the agreement to recommend home detention was contingent upon the availability of sentencing pursuant to section 5B1.1(a)(2)—hence, the "as permitted" language. If the defendant were ineligible, that part of the agreement necessarily would collapse because the recommended sentence would not be "permitted" by the Guidelines.

The parties acknowledged the likelihood of this eventuality, as well as the generally contingent nature of the agreement, when they agreed that:

> the offense level, specific offense characteristics, and possible criminal history category as determined pursuant to the Guidelines, are based upon information concerning this offense and this defendant *as it is now known, and could change based upon investigation by the United States Probation Office*. It is possible that factors unknown or unforeseen by the parties to the plea agreement may be considered in determining the total offense level and Guideline range. However, in that event, the defendant would not have the right to withdraw his plea of guilty.

(Emphasis added). Thus, although the agreement was predicated upon the assumption that Trapp's criminal history would be Category I and his total offense

level 10, placing him in Zone B, the plea agreement expressly anticipated that this could change, depending upon the outcome of the Report. It did: the Report determined that Trapp's criminal history was Category III and his total offense level 9, placing him in Zone C and making him ineligible for home detention pursuant to section 5B1.1(a)(2). Pursuant to the language of the plea agreement, this obviated the government's obligation to recommend home detention.

It is uncommon that parties to a plea agreement approach the bargaining table with complete knowledge of the defendant's criminal history. The plea agreement in this case acknowledged that reality and made allowance for it by conditioning the government's agreement to recommend a sentence of home detention upon eligibility for home detention pursuant to section 5B1.1(a)(2). Because the Report ultimately determined that Trapp was ineligible for such a sentence, the government was not obliged to make the recommendation and, therefore, did not breach the plea agreement when it failed to do so.

### B.

We next address Trapp's reliance upon *United States v. Nelson*, 222 F.3d 545 (9th Cir.2000), for the proposition that the government's representation in the agreement that it would recommend home detention created an obligation on its part not to recommend custody at sentencing, despite the changed circumstances. First, Trapp mischaracterizes the government's position at sentencing: it opposed Trapp's motion for a downward departure, it did not "affirmatively argue[ ] for a term of imprisonment." Second, *Nelson* does not help Trapp because that case is distinguishable.

In *Nelson*, the defendant was arrested in his home and charged with two drug offenses after government agents discovered 160 marijuana plants and five unloaded guns in various parts of the house. *Id.* at 547. Nelson entered a plea agreement with the government. Both parties believed that the guns were unrelated to the drug charges, and the agreement expressed the government's belief that Nelson " 'may be eligible for 5C1.2 reduction' [the 'safety valve' provision], and that '[i]f [he] is found to be 5C1.2 eligible a further reduction of two levels would result.' " *Id.* (last two alterations in original). Further, at Nelson's change of plea hearing, the government stated that it had a " 'good faith belief that [Nelson] is in fact, 5C1.2 eligible.' " *Id.* at 549 (alteration in original).

When the Probation Office's Report was complete, it recommended that Nelson's sentence include a two-level enhancement for possession of a dangerous weapon during his crime. It thus concluded that Nelson was ineligible for section 5C1.2 relief because section 5C1.2(2) disallows it if he possessed a firearm in connection with the offense. *Id.* at 547–48. At sentencing, the government concurred with the Report and actively opposed application of the safety valve, while Nelson argued that his possession of the firearms was not connected with his offense. *Id.* at 548.

We held that "the government's representations created an obligation on its part not to oppose application of § 5C1.2" because those representations were "strong enough to encourage Nelson to believe that the safety valve would apply in his case." *Id.* at 549. Further, we held that, despite language in the agreement that it was "based on information currently available," "no facts were developed after the time of Nelson's plea which could have altered the government's calculus and undercut its duty to perform under the agreement." *Id.*

The primary distinction between this case and *Nelson* is that there, at the time of the agreement and the change of plea hearing, the government was "possessed of all relevant facts, including the recovery of [the] guns." *Id.* In contrast, in this case the government was not aware of the full extent of Trapp's criminal history when it agreed to recommend a sentence of home detention—hence, the agreement's contingent nature. Information was developed by the Probation Office after the time of Trapp's plea which "altered the government's calculus and undercut its duty to perform under the agreement." *Id.* The Report determined that Trapp was ineligible for sentencing under section 5B1.1(a)(2).

Second, in *Nelson*, the government opposed application of the very guideline provision (the safety valve) about which it had made positive eligibility representations, both in writing and orally. Here, there is no such symmetry: while the government agreed to recommend home detention pursuant to section 5B1.1(a)(2) if it were available, it did not later "oppose" application of the provision. Rather, at sentencing both parties concurred with the Report's determination that section 5B1.1(a)(2) was unavailable. That is why Trapp moved the court for a one-level downward departure: to place him back in Zone B to make him section 5B1.1(a)(2) eligible. The government opposed the departure, arguing that it was unwarranted. However, because the government had made no representations about such a downward departure in the plea agreement or otherwise, it had no obligation not to oppose it. The only obligation of the government dealt with home detention pursuant to section 5B1.1(a)(2); it was not required to stand silent in the face of a request for a downward departure.

Therefore, in sum, the government did not breach the plea agreement when it failed to recommend home confinement pursuant to section 5B1.1(a)(2), nor did it breach the agreement when it opposed Trapp's motion for a downward departure.

AFFIRMED.